## Koehler et al., Appellants, *v.* St. Mary's Brewing Company, et al.

*Corporations—Sales—Sale of franchise and property—Inadequate price —Stockholders—Rights of minority—Fraud —Equity—Injunction.*

1. Under the Act of April 17, 1876, P. L. 30, a corporation has the absolute power to sell and convey its franchises and assets for a price or consideration fixable by the corporation as exercised through the votes of the majority of its stockholders, and a court will not set aside such a sale for mere inadequacy of price or enjoin the same where it is not shown affirmatively that the majority of the stockholders acted

fraudulently or collusively to deprive the minority stockholders of a fair distributive share of the proceeds of the sale.

2. A minority stockholder objecting to a sale of the corporation's franchise and property under the Act of April 17, 1876, P. L. 30, cannot be compelled to take anything but cash or its equivalent for his interest in the purchase price, and where the equivalent is a promise to pay, it must be a promise to pay within a reasonable time properly secured.

3. Where one brewery corporation sells to another its franchises and property as authorized by the act of 1876, a minority stockholder objecting to the sale cannot be compelled to take for his stock bonds of the purchasing brewing company running for thirty years and secured only by a mortgage on the brewery plant.

Argued May 18, 1910.   Appeal, No. 49, Jan. T., 1910, by plaintiffs, from decree of C. P. Elk Co., April T., 1909, No. 1, dismissing bill in equity in case of Fred Koehler; Fred Koehler, guardian of Anna Belle Blass; Fred Koehler and E. W. King, trustees for Ida B. Clover, Florence M. Magenau, Ida S. King, and Anna Belle Blass; C. M. Conrad, F. A. Brevillier and Adolph L. Curtze v. St. Mary's Brewing Company, William Kaul, John Kaul, J. K. P. Hall and George C. Simons.   Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ.   Affirmed on condition.

Bill in equity to enjoin sale of corporate property. Before ORVIS, P. J., specially presiding.

The facts appear in the opinion of the Supreme Court.

*Errors assigned* were refusal to admit testimony, and decree dismissing bill.

*Alex. Simpson, Jr.*, with him *Paul Benson, J. A. Gleason, Louis Rosenzweig, Gunnison, Rilling & Fish* and *Fred H. Ely*, for appellants.—The act overruling the common law should be strictly construed: Esterley's App., 54 Pa. 192; McMullen v. McCreary, 54 Pa. 230; 1 Weimer on Penna. Corp. Law, 390.

Governed by the rule of strict construction, sec. 5 of the Act of 1876, P. L. 30, should be construed to require

cash to be paid to dissenting stockholders where the corporate assets are sold to another corporation: Williamson v. Berry, 49 U. S. 495; Bigley v. Risher, 63 Pa. 152; Carr v. Tumbler Co., 207 Pa. 392; Barnett v. Phila. Market Co., 218 Pa. 649; Mason v. Pewabic Mining Co., 133 U. S. 50 (10 Sup. Ct. Repr. 224); Lauman v. Lebanon Valley R. R. Co., 30 Pa. 42; Miners' Ditch Co. v. Zellerbach, 37 Cal. 543; Farmers' Loan & Trust Co. v. R. R. Co., 54 Fed. Repr. 759.

*John G. Johnson* and *William A. Stone,* with them *E. H. Baird* and *Scandrett & Barnett,* for appellees.— The payment at the time of sale of the consideration in cash, is not a prerequisite to a valid exercise of a power to sell: Mackaness v. Long, 85 Pa. 158; Huthmacher v. Harris, 38 Pa. 491; Williamson v. Berry, 49 U. S. 495; Bigley v. Risher, 63 Pa. 152; Perin v. Megibben, 53 Fed. Repr. 86; Farmers' Loan & Trust Co. v. Toledo, etc., R. R. Co., 54 Fed. Repr. 759.

OPINION BY MR. JUSTICE BROWN, July 1, 1910:

On December 22, 1908, the Elk County Brewing Company, a Pennsylvania corporation, proposed to the St. Mary's Brewing Company, a like corporation, to purchase from it all of its franchises and property, real, personal and mixed, for the sum of $250,000. This was not to be paid in money, but in bonds of the purchasing company, running for thirty years and secured by a first mortgage on all of its property, rights and franchises. It further agreed to assume all the liabilities of the St. Mary's Brewing Company and that said company should retain from its cash assets $35,000 for the payment of dividends to its stockholders. On or about the date that the proposition was made the board of directors of the St. Mary's Brewing Company accepted it, subject to the approval of the stockholders, who were duly notified to meet on February 27, 1909, for the purpose of taking action upon the proposed sale. On February 26—the

day before the meeting—this bill was filed by the appellants, minority stockholders, for the purpose of enjoining the sale. No preliminary injunction was issued, and the meeting was held, at which 2,365 votes were cast, resulting in a majority of 535 in favor of the sale. The bill avers fraud on the part of the majority stockholders and board of directors of the St. Mary's Brewing Company and collusion between them and the Elk County Brewing Company, to deprive the complainants and other minority stockholders of the St. Mary's Brewing Company of their holdings in that company and to defraud them of their interest in the property and assets thereof. These allegations are denied in the answer, and the finding of the court is that the proposed sale is for a sufficient consideration and that there was no fraud or collusion between the defendants themselves, or any of them, or between the defendants, or any of them, and the incorporators, officers and directors of the Elk County Brewing Company. As this finding was warranted by the evidence, it is not to be disturbed.

Complaint is made of the court's refusal to allow the appellants to show, in support of their allegation of fraud, that the price offered was inadequate. Gross inadequacy of price is at times a badge of fraud in connection with a sale, but in a sale like this, made by one corporation to another, in accordance with the provisions of the Act of April 17, 1876, P. L. 30, inadequacy of price, standing alone, with nothing else to support the charge of fraud and collusion, is not in itself any evidence of fraud and is not sufficient to enjoin or set aside the sale. In the absence of fraud or collusion on the part of the majority stockholders, the minority stockholders of the St. Mary's Brewing Company are not to be heard to complain of inadequacy of price, for they knew when they became stockholders that the board of directors of the company could, with the consent of a majority of the stockholders, sell for such price as they might in good faith agree to take for the corporate property. They knew that, as to

this, they would at all times be compelled to bend to the will of the majority. There is no complaint that the election of the stockholders was irregularly held or that any statutory requirement in connection with the action of the board of directors or stockholders in agreeing to sell was disregarded; and, therefore, upon a mere naked allegation of inadequacy of price, the court below could not have entertained the appellants' bill. The disallowance of the offer to show inadequacy of price was for the following correct reason given by the court at the time of its exclusion: "As we conceive the law to be, the legislature by the act of 1876 has vested absolutely in the corporation itself the power to sell and convey its franchises and assets for a price or consideration fixable by the corporation as exercised through the votes of the majority of its stockholders. The power of reviewing such corporate action has not been given by the legislature to the courts and they will not set aside such sale for mere inadequacy of price or enjoin the same unless it be shown affirmatively that the majority of the stockholders acted fraudulently or collusively to deprive the minority stockholders of a fair distributive share of the proceeds of the sale. As we now view the testimony, so far produced by the plaintiffs, they have failed to show facts or to produce testimony from which we could infer fraud or collusion; on the other hand, by the witnesses whom they have called upon the stand they have produced considerable affirmative evidence that the sale was for the general and equal benefit of all the stockholders, and that none of the majority stockholders are participating or will in the future participate in the sale or be benefited by the results thereof in any way different from that of the minority stockholders. We could not from the testimony as we now recall it draw inferences to the contrary."

But the complaint of the appellants is not confined to fraud and collusion. It extends to that condition of the sale which requires them to take for their holdings, bonds

of the purchasing company running for thirty years. As to this they manifestly ought to have been heard and proper relief should have been granted. Their stock in the St. Mary's Brewing Company is concededly valuable, and because they are compelled to submit to a sale of the corporate property and franchises authorized and directed by the majority, are they to be compelled to take in exchange for it anything but money, or what, under the circumstances, a chancellor to whom they apply for relief ought to regard as its equivalent? Are they to be compelled to take bonds of a brewing company running for thirty years and secured only by a mortgage on the brewery plant, the value of which, long before the maturity of the bonds, may be practically swept away by a wave of prohibition or wiped out by the refusal of the court of quarter sessions to longer license it? There can be but one answer to this, and authorities numerous as they are, are hardly needed to support it.

A sale is "an agreement by which one of two contracting parties, called the seller, gives a thing and passes the title to it, in exchange for a certain price in current money, to the other party, who is called the buyer or purchaser, who, on his part, agrees to pay such price:" 2 Bouvier's Law Dictionary (Rawle's Revision), p. 943. "A sale may be defined as a contract, founded on a money consideration, by which the absolute or general property in the subject of the sale is transferred from the seller to the buyer:" 24 Am. & Eng. Ency. of Law (2d ed.), p. 1022. A sale is a transfer of the absolute or general property in a thing for a price in money: Benjamin on Sales (6th ed.), sec. 1. "A sale is a word of precise legal import, both at law and in equity. It means at all times a contract between parties, to give and to pass rights of property for money, which the buyer pays, or promises to pay, to the seller for the thing bought and sold:" Williamson v. Berry, 8 Howard, 544; Huthmacher v. Harris's Admrs., 38 Pa. 491; Bigley v. Risher & Wilson, 63 Pa. 152. It is not to be pretended that these definitions

are not applicable to a sale by one corporation to another of its franchises and property as authorized by the act of 1876, and, being so, clearly a minority stockholder objecting to the sale cannot be compelled to take anything but cash for his interest in the purchase price: Cook on Corporations (6th ed.), sec. 671; 2 Savidge on Corporations in Pennsylvania, sec. 1090. In the comparatively recent case of Carr v. Rochester Tumbler Co., 207 Pa. 392, a stockholder was held to the terms of the sale of the corporate property which gave him stock in payment of his interest because he had attended the meeting of the stockholders called to pass upon the proposed sale and had assented to the action of the majority in authorizing and directing it upon the terms stated; but we at the same time said: "It is true, and we do not know that the appellant disputes it, that a dissenting stockholder cannot be compelled to take anything but cash for his interest on the sale of the corporate property. If, however, he is one of the stockholders present and participating in, and assenting to, the action of the majority in authorizing a sale and transfer of the property, he cannot thereafter repudiate the terms on which the sale was authorized and made, and decline to accept payment for his stock in accordance with the conditions of sale." This was not mere obiter dictum, but was intended to be an announcement that if the stockholder had not waived his right to receive cash for his stock, he could not have been compelled to accept anything else for it.

But it is contended that because in Williamson v. Berry, supra, and other cases cited by counsel for the appellees, a sale is said to be "for money which the buyer pays or promises to pay," this sale ought not to be interfered with, as the bonds of the Elk County Brewing Company are promises to pay. This in effect means, and counsel for appellees so contend, as we understand them, that, as the act of 1876 confers upon majority stockholders unrestricted and unlimited power to sell, they may sell not only for money, but for a promise to pay

running for a long period of time, and with or without proper security for fulfillment. In other words, not only the sale, but the conditions of it as to the payment of the purchase money, are for the majority alone, to which the minority must yield in the absence of fraud or collusion to cheat them. If, under this theory of the appellees, the appellants can be compelled to take bonds running for thirty years, they could be compelled to take them running for a hundred. This never was and could not have been the intention of the legislature. To give judicial sanction to the contention of the appellees would be to place minority stockholders all over the commonwealth at the mercy of the majority, who, whenever so inclined, could most seriously impair, if not entirely wipe out, the holdings of the minority by compelling them to accept in exchange therefor promises to pay which no prudent business man would accept for his property if voluntarily selling it. Fraud and collusion, when practiced, are always hard to prove, for the perpetrators generally cover their tracks, and it is cold comfort to a minority stockholder to tell him that he will not be compelled to accept anything but cash or its equivalent for his stock, if he can show fraud or collusion on the part of the majority in a sale of the corporate property.

It is to be remembered that, as to these appellants, the sale to the Elk County Brewing Company was an involuntary one. This seems to be entirely overlooked by the appellees. A promise to pay is, of course, the same as money when a seller voluntarily takes it. By his acceptance of it, or his agreement to accept it, in a contract of sale, he is estopped to say that it is not money for the purpose of sustaining or enforcing the sale; but not so when one sells involuntarily, being compelled to do so by the law, as in the present case. The right then is to get money for that which the owner is compelled to part with, or what, under the circumstances, a chancellor ought to regard as the equivalent of money. If the equivalent is a promise to pay, it must be a promise to pay

within a reasonable time, properly secured. All this is for a chancellor when he is asked to protect the legal rights of a stockholder, and from his decree an appeal will always lie for abuse of discretion.

On the reargument of this appeal counsel for appellees stated that, while they still insisted that the appellants should be compelled to take the bonds of the Elk County Brewing Company, they were willing to have the decree dismissing the bill affirmed upon condition that the appellants be paid cash for their proportionate shares of the purchase price. This was very prudent, and the decree is affirmed, upon condition that the appellees pay, or cause to be paid, to the appellants within sixty days, cash for their respective interests in the purchase price of $250,000, for the sale and transfer to the Elk County Brewing Company of the franchises and corporate property of the St. Mary's Brewing Company, the costs below and on this appeal to be paid by the appellees.