No. 14,077.

MACKENZIE *v.* TAGGART ET AL.
(73 P. [2d] 978)

Decided November 15, 1937.

Mr. C. W. Dolph, Mr. John T. Adams, for plaintiff in error.

Foard Brothers, Mr. C. H. Babcock, for defendants in error.

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

The parties appear here in the same relative positions as in the district court and for convenience will be mentioned as plaintiff and defendants, or by name. Plaintiff, as a stockholder of the Cudahy Gold Mining Company, brought suit against the defendants in the district court of Teller county, on or about February 17, 1935, to cancel and set aside a public trustee's deed, the public trustee's certificate of purchase and the deed of trust issued to defendants on certain mining claims and property of the mining company, on the theory that the board of directors of the company had no power to encumber its mines or plant until the question of creating such encumbrance had been submitted at a proper and legal meeting of the stockholders of the company and a majority of all the shares of stock of such company had been voted in favor of such encumbrance. The suit was tried before the court without a jury and at the close of plaintiff's case and upon

motion of defendants and interveners for a nonsuit the court sustained the motion, dismissed the action and entered judgment against the plaintiff for costs on the ground that the evidence disclosed a ratification by the stockholders of the contract which the board of directors had entered into with Taggart and which provided that a trust deed might be given in the event of the exercise of one of the options in the contract. The case is brought to this court on error for the purpose of obtaining a reversal of the judgment.

The interveners are persons to whom Nellie May Taggart and the Exchange National Bank of Colorado Springs, as trustees under the testamentary trust of John R. Taggart, deceased, had sold the mining property, title to which they had obtained by the public trustee's deed, on contract. They were, therefore, interested in the outcome of the suit and were permitted to intervene. The defendant, the Cudahy Gold Mining Company, is a mining corporation and the trust deed sought to be voided encumbered the mining property belonging to the company. The following is a chronological recital of the transactions leading up to the execution of the public trustee's deed as shown by the record.

August 10, 1926, a special meeting of the board of directors of the company was called for the purpose, among others, of "considering and acting on providing ways and means of securing a loan for the purpose of paying off an indebtedness of the company, now being foreclosed by proceedings of public trustee of Teller county, Colorado, of trust deed given by the company for use of Charles W. Schmitz, owner, and for the transaction of any other and all business that may legally be done at the meeting to be called at 11:30 A. M. the 10th day of August, 1926, A. D. at the company's office."

The minutes of the meeting contain the following record: "On motion being made by C. D. Weimer authorizing the secretary and vice president to issue a trust deed or use whatever means necessary to secure the amount of

money to clean up the indebtedness of the company. On motion being put same was seconded by J. W. Brauer and unanimously carried.''

The bylaws of the company are in part as follows: ''Article III, Section 2: The annual meeting for the election of directors and the transaction of such other business as may come before them shall be held on the first Monday in November in each year.

''Article III: Section 3: Notice of such annual meetings shall be given by the publication of a call for such meeting in a newspaper published in the city of Colorado Springs, Colorado, at the time and in the manner prescribed by law; also by delivering such notice to each stockholder personally, or depositing same in the post office addressed to each stockholder, in the manner and within the time provided by law.

''Article IV, Section 1: The board of directors shall have all the powers of the corporation and all the management of its business, unless otherwise provided for by law.''

January 5, 1927, a meeting was held purporting to be an annual meeting of the company pursuant to the following notice: ''Notice of an annual meeting of the stockholders of the Cudahy Gold Mining Company. Notice is hereby given, that there will be an annual meeting of the stockholders of the Cudahy Gold Mining Company, to be held at the offices of the company, 306-307 Colorado Springs National Bank Building, Colorado Springs, Colorado, at 10 o'clock A. M. on Monday, November 8, A. D. 1926, for the purpose of electing directors of the company and for the transaction and ratification of any and all other business that may come before the said meeting. Most respectfully, the Cudahy Mining Company, By authority of the Board of Directors. October 4, A. D. 1926. (Affidavit of publication in Colorado Springs Farm News attached.)''

In the minutes of this meeting the following appears: ''On motion duly made and seconded, the acts of the di-

rectors of the Cudahy Gold Mining company for the year 1926 are hereby ratified and confirmed, and all that has occurred at the meetings of the board of directors, and the minutes thereof which have been read by the stockholders, and in signification of such approval, ratification and confirmation and of our assent to any and all such acts at their meetings, we do hereby confirm and approve. Same was seconded by Mr. J. W. Brauer and on vote being taken same was unanimously carried.''

February 7, 1927, plaintiff became a stockholder in the company.

February 9, 1927, the company executed a certain contract with John H. Taggart, and transferred to him as collateral security for the repayment of $3,000 then advanced by him, 175,000 shares of its stock. The contract set forth three options that Taggart might exercise. The first option was that Taggart might treat the advancement as a straight loan in the event he did not exercise the second or third options. The second provided that on thirty days' notice Taggart might return 100,000 shares of stock pledged with him as collateral security and retain 75,000 shares in payment of the indebtedness. Under the third, Taggart, on thirty days' notice, might return the 175,000 shares and thereupon the company would give him its note and a trust deed on the mining property of the company in the agreement particularly described. Following the description in the contract is the following: ''The same being more fully and accurately described in a public trustee's sale notice published in the Cripple Creek Times and Victor Record of July 13, 1926, to which reference is hereby made.''

The said contract contained the following provision: ''The above loan and securities to be held by the said party of the second part for a period of six months subject to his exercise of the options hereinafter set forth.''

On July 13, 1927, Taggart advanced an additional $1,000 and the agreement and options were extended six months, otherwise the contract containing the options was

to remain unchanged except that the amount due Taggart was to be increased from $3,000 to $4,000 and an additional 20,000 shares of the company's stock was pledged to him as collateral security.

July 14, 1927, a special meeting of the directors of the company was held. The minutes of that meeting contain the following: ''The meeting was called to order by the President and on motion being made by C. W. Weimer and seconded by J. W. Brauer for ratifying the loan made by J. R. Taggart on July 9th, 1927, as per the following copy of the contract: which is a part of this meeting and was read to the board of directors. This extension contract is dated July 13, 1927, being an extension contract to an agreement contract dated February 9, 1927.

''After the reading of the extension contract by the board of directors the deal made by Mr. S. S. Bernard for the Cudahy Gold Mining Company with Mr. J. R. Taggart was ratified.''

No copy of the extension agreement was attached to the minutes.

October 7, 1927, a special meeting of the board of directors was held. The minutes of this meeting contain the following: ''Resolved: That a special meeting of the stockholders of the Cudahy Gold Mining Company be and the same is hereby called to be held at the office of the corporation at number 111 South Weber Street, Colorado Springs, El Paso County, State of Colorado, on the 16th day of November A. D. 1927, at the hour of ten o'clock A. M. for the purpose of considering a certain proposed amendment to the articles of incorporation, and for the transaction of such other business as may properly come before the meeting.'' The caption of the minutes of that meeting is as follows: ''Minutes of the annual meeting of the stockholders of the Cudahy Gold Mining Company at the offices of the company, held on November 16, 1927, duly called by notice, copy of which is hereby inserted.'' The secretary stated that the minutes of this meeting were the minutes of the annual meeting of the stockhold-

ers of the company held at the offices of the company on November 16, 1927. The meeting was adjourned to November 19, 1927.

November 19, 1927, the adjourned meeting was continued with 766,661 shares out of 1,000,000 shares authorized capital stock represented. The minutes of this meeting contain the following: "Thereupon the following resolution was presented on motion of C. D. Weimer, and seconded by J. W. Brauer: Resolved: That the stockholders ratify, approve and confirm all of the acts of the outgoing directors and officers for the past year, and also the annual report made by the treasurer of the corporation company, November 19, 1927, which resolution was duly adopted by all of the stockholders present voting therefor."

Notice of the foregoing meeting was published, but notices were not mailed to the individual stockholders. Plaintiff Mackenzie's stock was voted at this meeting by S. S. Bernard, who voted also 95,000 shares of stock by proxy from Taggart. Plaintiff's stock was voted by his proxy for the resolution last above set out.

August 11, 1929, Taggart died testate and the defendants, Nellie May Taggart and the Exchange National Bank were appointed and qualified as executors of his will.

February 14, 1930, the company executed to the executors of the estate of said deceased its note for $4,926, secured by a trust deed on the mining property of the company and by authorization of the county court having jurisdiction of the estate of said deceased the executors surrendered the corporate stock of the company held by said Taggart as collateral security and the $1,000 note given on the occasion of the execution of the extension agreement.

The sole question involved is whether the foregoing situation amounts in legal effect to a compliance with the requirements of section 2263, C. L. 1921, which so far as here material is as follows: "The board of direc-

tors or trustees of a mining or manufacturing corporation shall not have power to encumber the mines or plant of such corporation, or the principal machinery incident to the production from such mine or plant until the question shall have been submitted at a proper and legal meeting of the stockholders, and a majority of all the shares of stock shall have been voted in favor of such proposition; and any mortgaging or encumbering of such property, without such consent, shall be absolutely void, and the vote upon such proposition shall be entered on the minutes of the corporation.''

We deem this question fully raised by plaintiff's single assignment that the district court was in error in sustaining defendant's and interveners' motion for a nonsuit at the close of the plaintiff's evidence.

With respect to the stockholders' meeting of June 5, 1927, the trial court, properly construing, as we believe, the action there taken as disclosed by the minutes of the meeting, said:

''It appears that on the 10th day of August, 1926, foreclosure was pending, and the directors realized that they had to raise money or lose the property. The resolution of the directors, introduced August 10th, sets forth this foreclosure and the question of ways and means to raise the money. It was proposed that money be borrowed on a deed of trust, or raised in any other way for the purpose of paying the debt which was being foreclosed. Apparently nothing further was done until the stockholders' meeting of January 5, 1927, and at that meeting the acts of the directors and officers for the preceding year, which covered the action taken at the meeting of August 10th, was approved. There is no showing this was not a regular meeting properly called.'' The further comments of the trial court in ruling on the motion for nonsuit we think correctly analyze the evidence presented by the record. These comments were as follows: ''Following that meeting, in February, 1927, the board of directors attempted to carry out the resolution of the board of

August 10th, referring to it by date, which action was authorized and ratified by the stockholders meeting a few days prior; and the contract was entered into for raising 3,000.00 dollars and which gave three options, one of which was a direct sale of stocks and another a deed of trust to secure the $3,000.00. Before the time to exercise the options had expired, an extension agreement was entered into and an additional $1,000.00 was written into it, making the total loan $4,000.00.

"Thereafter and on November 19, 1927, at an adjourned meeting of the stockholders called for November 16, at which more than a majority of the stock was represented (Plaintiff was there by proxy), action was taken by the stockholders approving the act of the directors and officers for the preceding year, which included what the directors did as to the extension agreement.

"It is insisted that the stockholders meeting was not properly called. I don't know that a court of equity should concern itself about that feature. Stockholders who were there and participated in person or by proxy, should have known about it more than anyone else. If they had no right to take this action because the meeting was not properly called, they should not have taken it. But having taken it they are not in position to complain because someone else relied upon that action.

"The majority of the stockholders having consented to the action of the board of directors, it seems to me there is a sufficient ratification of the contract which provided that a deed of trust might be made, to take it out of the strict provisions of the statutes."

We think the applicable principles of law are correctly set forth in *Dillon v. Myers,* 58 Colo. 492, 146 Pac. 268, a case in which the statute here involved was under consideration. In that case the court quoted with approval the following language from *Westerlund v. Black Bear Mining Co.,* 203 Fed. 599, 121 C. C. A. 627: "But an act or contract of a corporation which is within its general corporate powers, which is neither wrong in

itself nor against public policy, but which is defective from a failure to observe in its execution a requirement of law enacted for the benefit or protection of a third party or parties, is voidable only. Such an act or contract is valid until avoided, not void until validated, and it is subject to ratification and estoppel.'' (Citing a large number of cases.) The case of *Dillon v. Myers* did not involve an attack by a stockholder asserting rights under the statute; but the provisions of the statute being for the stockholders' benefit, and not against the general public policy of the state, action not authorized still is within the corporate powers of the company and the stockholder may ratify what was done without compliance with the formalities required for its authorization or be estopped from setting up noncompliance. The complaining stockholder having voted his stock—by proxy—for ratification of the action of the board cannot now repudiate such action where subsequently accruing rights of third parties will be cut off by his so doing. ''Stockholders who vote in favor of a transaction and their transferees cannot maintain a suit on behalf of the corporation and other stockholders to avoid such transaction. * * * Where an act done by a private corporation is not per se illegal, nor malum prohibitum, and is not a matter of public concern, but merely affects the interests of the stockholders, the latter may so act as to deprive themselves of the right to challenge its validity.'' *Boldenweck v. Bullis*, 40 Colo. 253, 90 Pac. 634.

The judgment of the trial court is affirmed.

MR. JUSTICE BOUCK dissents.

MR. JUSTICE BOUCK, dissenting.

It seems to me that the majority opinion herein virtually repeals '35 C. S. A., ch. 41, §27 (e) [S. L. '21, §4, p. 198, 201], which prohibits the encumbering of corporate assets by a mining or manufacturing corporation without a previous authorizing vote at a special meeting of the

stockholders. The only argument made in favor of the judgment of affirmance is that the plaintiff stockholder ratified the directors' admittedly unauthorized encumbering of the assets of this mining corporation by granting a proxy to one who voted in his name at a stockholders' meeting called "for the purpose of electing directors of the company *and for the transaction and ratification of any and all other business that may come before the meeting.*" (Italics are mine.) Neither the notice nor the minutes of the directors' meetings nor the minutes of the stockholders' meeting for alleged ratification can be said to have given the slightest inkling that one of the matters sought to be ratified was the unauthorized mortgage which the directors had placed upon the corporation's assets, when the statute expressly stated that such encumbering is void. To say that the notice stated the "object" of the meeting in that regard within the meaning of the section is to give judicial sanction to the doctrine that "language is the art of concealing thought." Without saying that there can be no ratification under any circumstances whatever, if the mortgage is given without the stockholders' consent in advance, I do say that, aside from the question of a sufficient notice, the plaintiff stockholder had nothing like that detailed and complete knowledge of pertinent facts which is a prerequisite to binding a person by ratification. Compare: *Montrose Land and Inv. Co. v. Greeley Nat. Bank,* 78 Colo. 240, 241 Pac. 527.

Moreover, I think counsel for the stockholder have presented conclusive reasons for holding that the creditor to whose personal representatives the mortgage was given after his death had duly exercised an option whereby he accepted a certain large block of the capital stock of the corporation in full settlement of his claim and to the exclusion of any right he might otherwise have had to demand a mortgage as security. Justice, I think, requires a new trial.

Lack of time is my justification for filing this hurriedly written memorandum of dissent.