Benjamin Brenner, J.
Plaintiff, a minority stockholder, moves for an injunction pendente lite restraining the individual defendants from completing a proposed sale of the equipment and fixtures of the defendant corporations; violating their employment agreements with the defendant corporations; conducting and operating a business for their own use and benefit under a similar name as that of one of the defendant corporations ; competing with the defendant corporations and discontinuing the operation of the corporations, and for an order appointing a receiver. The action is to permanently restrain the individual defendants from all of the aforesaid and from dissolving the corporations.
Prior to January 1, 1956 plaintiff was the sole stockholder, officer and director of the defendant Arlington State Paper Box Co., Inc., hereinafter referred to as Arlington. The individual defendants were the sole stockholders, officers and directors of the defendant Harmony Paper Box Corp., hereinafter referred to as Harmony, engaged in a business similar to that of Arlington. The parties entered into a stockholders’ agreement dated January 1, 1956 providing for the consolidation of the corporations though preserving their individual identities, plaintiff obtaining a one-third interest in each corporation and the individual defendants a two-thirds interest. The machinery and equipment of both corporations were merged and the surplus machinery sold; the addresses of the corporations that of Harmony. It further provided that the individual defendants retain control as officers and directors of the corporations. Employment contracts were executed simultaneously providing that each individual draw a total of $100 from both corporations.
The parties found themselves in dispute as to the terms of the stockholders’ agreements but apparently carried them out until July 3, 1957, when the defendant corporations ceased paying the plaintiff his salary. Plaintiff then secured from this court the appointment of an arbitrator pursuant to the terms of the employment contract, who found in favor of the plaintiff that the defendant corporations had breached the employment agreements, allowing plaintiff earnings at the contract rate up to the time of the award. All parties moved to vacate the award, plaintiff contending that he was entitled to be paid for the unexpired term of the contract. Mr. Justice Brown, before whom the application was made, by decision *100 dated March 4, 1957 (N. Y. L. J., p. 11, col. 2) sustained the contention of the plaintiff and remitted the matter to the arbitrator for further proof as to damages. While the matter was thus pending, the individual defendants as officers of the corporations, apparently pursuant to sections 20, 21 and 45 of the Stock Corporation Law, called a special meeting of the stockholders to pass upon the liquidation of both corporations as well as related matters. The minutes taken at the meeting, attended by the parties and their attorneys, disclose that a resolution, probably prepared by the attorney for the individual defendants, was read by him, to the effect that in view of the expiration of the leasehold of the premises occupied by the corporations on March 31, 1958, it was urgent that the fixtures, equipment and merchandise be sold. (It should be here noted that the owner of the building offered to enter into a new lease, an offer which was declined.) The resolution further authorized the three stockholders to dissolve the corporation, sell the equipment and machinery and convert the same into cash, and that any proceeds after the payment of creditors be divided in accordance with their respective stock interests. However, as a result of an apparently heated discussion, the resolution was never offered for adoption, ratified or a vote taken thereon.
Plaintiff charges that the individual defendants have adopted a plan to freeze him out of the corporations by refusing to renew the lease of the premises; that they formed a partnership under a similar name at another address and, though still officers of the defendant corporations, are soliciting and converting the accounts and good will of the defendant corporations. Plaintiff calls attention to the notices sent to the trade, creating the impression that it was the same firm but that the operations were at new and larger quarters with more modern machinery. He alleges that despite lack of approval of the resolution, auctioneers have been called in to sell at public auction all of the equipment, as evidenced by notices of an advertisement to that effect placed in the newspapers. He maintains that though the corporations are solvent and conduct a profitable business, the individual defendants have progressed with their plan to dissolve the corporations and to appropriate to themselves the business, good will and assets of the corporations. In his view, the dissolution and forced sale would in effect be an attempt to circumvent and frustrate the decision of Mr. Justice Brown.
Prior to the enactment of' sections 20 and 21 of the Stock Corporation Law and at common law neither the majority stockholders nor directors could bring about a sale or cause a *101 transfer of any portion of the property essential for the transaction of its customary business of a solvent corporation which was justifying the reason for its corporate existence against the will of a minority, however small. (Abbott v. American Hard Rubber Co., 33 Barb. 578; People v. Ballard, 134 N. Y. 269; Matter of Timmis, 200 N. Y. 177.) In view of certain injustices to both minority and majority stockholders, legislation was enacted, embodied in sections 20 and 21 of the Stock Corporation Law, enabling a corporation with the consent of the holders of record of two thirds of its outstanding shares entitled to vote thereon to sell and convey its property rights and privileges or any interest or part thereof and the minority stockholders, if opposed, are granted the right to an appraisal of and payment for the value of the stock. This legislation was designed to overcome such prior injustices and enabled a majority of two thirds to sell if they deemed it advisable, and at the same time it protected the minority if the latter regarded the sale as opposed to their interests. (Matter of Timmis, supra; Eisenberg v. Central Zone Property Corp., 306 N. Y. 58.) However, it is implicit in these sections of the statute that there must be a vote of two thirds of the stockholders, duly called pursuant to section 45 of the Stock Corporation Law before they become operative (Cachules v. 116 East 57th Street, 125 N. Y. S. 2d 97), and that mere consent of less than all stockholders, without such vote at such meeting, does not satisfy the statute, or protect the minority stockholders.
As above indicated, the purpose for which the meeting was called was never consummated. The resolution was not offered for adoption by any officer or stockholder, nor was it approved by any vote of the stockholders. The failure to thus comply with the mandate of the statute denies to defendants any authority or power to dissolve the corporations and to sell the assets, even assuming that factors of legality and propriety are not involved. It must be observed, too, that if these defendants undertake unauthorized acts, they are answerable for damages resulting therefrom. (Gottfried v. Gottfried Baking Co., 1 A D 2d 994.)
However, more serious charges have been presented. Minority stockholders are not limited in remedy to an appraisal of their stock under sections 20 and 21 of the Stock Corporation Law if they avail themselves of remedies in equity attacking a proposed dissolution and sale as illegal and fraudulent. Absent a showing of bad faith, fraud or other breach of trust, minority stockholders may not be heard to complain of a sale of corporate assets since they have available the adequate *102 remedy of appraisal and are entitled to every item of value that may be established. (Beloff v. Consolidated Edison Co., 300 N. Y. 11; Blumenthal v. Roosevelt Hotel, 202 Misc. 988.) But I where a breach of a fiduciary relationship, fraud and illegality I are charged the powers of equity spring forward to protect the I minority stockholders. (Kavanaugh v. Kavanaugh Knitting Co., 226 N. Y. 185, 196.)
Majority stockholders of a corporation, particularly of a closed corporation, owe to minority stockholders the utmost of good faith. They may not, in breach of such fiduciary obligation, use their corporate power for their own individual purpose or to their own advantage at the expense of the minority. (See, also, Warnecke v. 40 Wall Street Bldg., 8 Misc 2d 317.)
A preliminary injunction must issue upon a showing of facts warranting the interposition of a court of equity in advance of trial. It is clear from the facts herein presented that the dissolution and sale must be enjoined pending a full exploration by a trial court of all the relevant facts. Accordingly, so that the status quo of the parties remain intact, the application for an injunction pendente lite is granted and the case set down for trial on April 8, 1958 at Special Term, Part III of this court, subject to the approval of the Justice presiding at that time, plaintiff to file and serve a note of issue for such date.
Settle order on'notice.