## Reifsnyder, Appellant, *v.* Pittsburgh Outdoor Advertising Co.

Argued March 22, 1961.  Before JONES, C. J., BELL, MUSMANNO, COHEN, BOK and EAGEN, JJ.

reargument refused August 18, 1961.

*John C. Hanna,* with him *Metz, Cook, Hanna & Kelly,* for appellant.

*Carl E. Glock,* with him *Reed, Smith, Shaw & Mc-Clay,* and *Strassburger & McKenna,* and *Eckert, Seamans & Cherin,* for appellees.

OPINION BY MR. JUSTICE COHEN, July 18, 1961:

We are called upon in these appeals to determine whether the defendants in a prior action brought by a shareholder are entitled to have the plaintiff in that action pay the costs and attorneys fees incurred by them in successfully defending that suit by virtue of the Act of April 18, 1945, P. L. 253, 12 PS §1321.[1] In order to make this determination we must decide whether the prior action in which the present appellant was the plaintiff and the present appellees, the defendants, was a secondary or derivative suit as opposed to a direct personal or representative one.[2]

The prior action, *Reifsnyder v. Pittsburgh Outdoor Advertising Company*, 396 Pa. 320, 152 A. 2d 894 (1959), was a suit by a minority shareholder against the corporation whose stock he owned and against cer-

---

[1]The Act of 1945, *supra*, provides that plaintiff shareholders who hold less than 5% of the outstanding shares of any class of stock may be required to post security for costs and attorneys fees which may be recovered by a successful defendant corporation in a suit brought by a shareholder to enforce a *secondary* right. This statute is similar to legislation enacted in a number of states to prevent the abuses involved in so-called "strike suits." See N. Y. Gen. Corp. Law §61-b; N. J. Rev. Stat. §14:13-:15 (Supp. 1947). The New York Statute was upheld under the state constitution: *Lapchak v. Baker*, 298 N. Y. 89, 80 N.E. 2d 751 (1948), and the New Jersey statute, which is practically identical to the New York one, has been held valid under the federal constitution: *Cohen v. Beneficial Industrial Loan Corporation*, 337 U. S. 541 (1949). There are a number of significant distinctions between the Pennsylvania and New York statutes. We find it unnecessary, however, to rule on the constitutionality of the Pennsylvania Statute. See Reader, Suits Against Corporations, special commentary found at introduction to Volume 12 of Purdon's Statutes §§1221-1820, for a detailed discussion of the Pennsylvania statute and for a comment on this type of legislation.

[2] A representative action is a class action or a direct personal action brought on behalf of those "similarly situated." Representative actions do not fall within the purview of the Act of 1945.

tain of its officers and directors. In that suit Reifsnyder, the present appellant, contested the validity of resolutions enacted at a shareholders' meeting and passed by votes of the majority shareholder. The resolutions in question authorized the corporation to purchase on its own behalf all the stock in the corporation held by the majority shareholder and to increase the corporation's indebtedness in order to finance the purchase. Reifsnyder also sought in the prior action to nullify the acts taken pursuant to the resolution and to restore the status quo. Reifsnyder was unsuccessful in the lower court in that action and when the case came before us on appeal we dismissed the appeal because of failure to join an indispensable party. The present appellees then petitioned the court of common pleas to determine and award fees and expenses incurred in the defense of the initial action. Approximately $70,000 was awarded to the appellees and this appeal followed.

Appellees claim that the appellant's act of posting security for costs in the original suit and the lower court's treatment of the former proceeding as a derivative suit are determinative of the issue before us. We do not feel that such factors are controlling. In determining whether a suit is direct or derivative the allegations of the complaint germane to the cause of action must govern. See 13 Fletcher, Cyclopedia Corporations §5911 (rev. vol. 1961), and cases cited therein.

The complaint filed by Reifsnyder in the prior action was divided into three major sections. The first section contained 21 paragraphs which set forth in great detail the circumstances surrounding the adoption of the contested resolution and the events subsequent to the adoption of the resolution. The second section contains a request that the court adjudicate and decree that, (a) the resolution to increase the in-

debtedness was not adopted "by the affirmative vote of a majority of the outstanding shares entitled to vote thereon;" (b) the majority of outstanding shares necessary to authorize an increase in indebtedness could only be obtained by the affirmative vote of the shares held by General Outdoor Advertising Company (the majority shareholder); (c) the shares held by General Outdoor Advertising were not entitled to vote at the meeting on the resolution to increase the indebtedness of Pittsburgh Outdoor Advertising; (d) (e) (f) & (g) the increase of the indebtedness was not properly authorized, was void for this and other reasons, and was prejudicial to the rights of the appellant as a shareholder; (h) the shares held by General Outdoor Advertising were not entitled to vote for the resolution authorizing the purchase of the shares; (i) the action of the defendants in voting and/or accepting the votes at the meeting on the shares held by General Outdoor Advertising in favor of the resolution to purchase the shares held by General Outdoor Advertising was invalid and injurious to the rights of the appellant as a shareholder; (j) the actions of the defendants in effectuating the purchase of Pittsburgh stock owned by General Outdoor Advertising and the increase of indebtedness, "upon the terms and in the manner hereinbefore averred," constituted an improper exercise of corporate power by them for the benefit of the majority shareholder, General Outdoor Advertising, and a breach of their fiduciary duties to appellant as a shareholder of Pittsburgh Outdoor Advertising; (k) the purchase of stock and the increase of indebtedness "upon the terms and conditions hereinbefore averred" amounted to an appropriation of the assets without the approval of all the shareholders as required by law that was injurious and prejudicial to the appellant as a shareholder of Pittsburgh Outdoor Advertising; and (1) the price paid for the shares was excessive.

The third section of the complaint is a request that the court issue the decrees necessary to restore the status quo that existed before the adoption of the resolution.

If the complaint were limited to paragraph "1" of the second section we might be constrained to hold that the original action was derivative for the reason that an excessive payment by the officers and directors of a corporation in the course of making a corporate acquisition would constitute a harm peculiar to the corporation and would normally only be indirectly injurious to a shareholder.[3] A suit by a shareholder to contest such a transaction would be of a derivative nature.[4]

However, the complaint is not so limited. Indeed paragraphs "a" through "k" of the second section of the complaint are explicitly concerned with the right of a majority shareholder to vote on a resolution in which he has a personal pecuniary interest—the right of the majority shareholder to vote on a resolution authorizing the purchase of all of his shares. It appears that this question, namely the right of a majority shareholder to vote on a resolution in which he has a direct pecuniary interest, was the gravamen of the complaint in the prior action.

We now turn to the question of whether this issue raised in the complaint was purely frivolous and thus merely a subterfuge attempting to disguise a harm to the corporation by alleging such a harm in the terms of a direct injury to an individual shareholder. Al-

---

[3] This allegation is undoubtedly the basis of the erroneous dicta in our prior opinion to the effect that the complaint was primarily concerned with a breach of duty to the corporation.

[4] "If the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation . . . a stockholder cannot sue as an individual." 13 Fletcher, Cyclopedia Corporations, §5911 (rev. vol. 1961). The footnotes have been omitted.

though the courts have been reluctant in the absence of fraud or other special circumstances to deny the right of shareholders to participate in voting on matters in which they have an interest, we need not decide whether we would grant relief on the basis of such a cause of action. We must, however, recognize that appellant's theory is not novel and that there has been considerable commentary[5] on a trend which recognizes greater responsibility in this area, or, as this responsibility is often termed, a fiduciary duty owed by the majority shareholders to the minority.[6]

Corporate law in general, and the status of the minority shareholder in particular, is in a constant state of flux. New formulae and rules giving recognition to changing concepts of business morality and the needs of a dynamic and complex industrial society are continually being adopted by our legislatures and courts.[7] There can be little doubt that as ownership of American industry becomes more diverse greater rights and responsibilities will attach to the status of shareholders. It may well be that eventually shareholders will be barred in certain situations from voting on resolutions in which they have a direct pecuniary interest.

---

[5] See for example Sneed, The Factors Affecting the Validity of Stockholder Votes in Adverse Interest, 13 Okla. L. Rev. 373 (1960) ; Sneed, The Stockholder May Vote as He Pleases: Theory and Fact, 22 U. Pitt. L. Rev. 23 (1960) ; Sneed, Stockholder Votes Motivated By Adverse Interest: The Attack and the Defense, 58 Mich. L. Rev. 961 (1960). Note, Fiduciary Obligation of Majority Stockholders, 51 Yale L. J. 1034 (1942) ; Lattin, Equitable Limitations on Statutory or Charter Powers Given to Majority Stockholders, 30 Mich. L. Rev. 645 (1932).

[6] See *Vierling v. Baxter*, 293 Pa. 52, 141 Atl. 728 (1928) ; *Southern Pacific Company v. Bogert*, 250 U. S. 483 (1919) ; *Hyams v. Calumet & Hecla Mining Co.*, 221 F. 529 (6th Cir. 1915).

[7] See for example the action taken by the court in *Perlman v. Feldmann*, 219 F. 2d 173 (2d Cir. 1955).

If it should become a rule of law that a shareholder cannot vote on matters in which he has an interest, an aggrieved shareholder would necessarily be permitted to bring an action to enjoin the voting of "interested" shares or to require the corporate officers to rescind action taken in reliance upon the votes of such shares. The aggrieved shareholder in those instances would, in essence, be preventing the dilution of his own votes by challenging and disqualifying improper votes. The right to vote is basic and fundamental to most shares of stock and is independent of any right that the corporate entity possesses[8] and the shareholder could enforce and protect such rights by bringing a direct action.[9]

Since the complaint in the prior action is primarily concerned with the protection of such voting rights and since a shareholder may bring a direct action to protect his voting rights, the prior action must be classified as a direct action. Direct actions do not fall within the purview of the Act of 1945, supra, and appellees therefore are not entitled to reimbursement for their attorneys fees.

Orders reversed.

Mr. Justice BELL dissents.

Mr. Justice BENJAMIN R. JONES took no part in the consideration or decision of this case.

---

[8] The right to vote is often considered a shareholder's most fundamental right. See listing of shareholders' rights, 13 Fletcher, Cyclopedia Corporations, §5717 (rev. vol. 1961).

[9] There is no question that a shareholder may bring a direct action to protect his voting rights. See *Webster Eisenlohr, Inc. v. Kalodner*, 145 F. 2d 316 (3d Cir. 1944).