341 A.2d 95

**Abraham FISHKIN, Appellant,**

**v.**

**HI–ACRES, INC., et al.**

Supreme Court of Pennsylvania.

Argued Oct. 10, 1974.

Decided July 7, 1975.

310

Harry W. Miller, Miller, Urbanik & Sherman, Pittsburgh, for appellant.

J. Robert Maxwell, Maxwell & Huss, Robert K. Stitt, III, Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant, Abraham Fishkin, is a minority shareholder, director and secretary-treasurer of Hi-Acres, Inc., a Pennsylvania Corporation.[1] He brought this suit in equity alleging that the two majority shareholders of Hi-Acres, R. F. and Louise L. Zahorchak (who are, respectively, the president and vice-president and also directors of the company), had, purportedly on behalf of the corporation, alienated certain real estate of the company to Carl Lubetsky, Louis Zelekovitz and Morris Lubetsky, appellees herein. The complaint, brought against the Zahorchaks, the company and the three transferees, averred that although the deed contained a statement of authorization of sale by the board of directors, there had been in fact, no prior director approval. As to the shareholder-defendants, the Zahorchaks, equitable relief in the nature of an accounting for the proceeds of sale was sought, as well as injunctive restraint against any disbursement of those proceeds until after the final disposition of the litigation. The relief requested as to the three purchaser-defendants was a declaration that the sale was a nullity and an injunction prohibiting the vendees from taking possession of the premises.[2]

Both the Zahorchaks and the purchaser-defendants filed preliminary objections, which included preliminary objections in the nature of a demurrer. In each instance the demurrers were sustained by the trial court. With respect to the shareholder-defendants the court in its de-

---

1. The complaint states that Fishkin is also a pledgee of the majority shares owned by defendants Zahorchak, but does not indicate that the pledge carried with it voting rights pertaining to the stock.

2. No relief was requested as to Hi-Acres, Inc. other than the declaration that the transaction of sale to which it was purportedly a party was void.

cree gave leave to appellant to file an amended complaint; it concluded that because of the fiduciary relationship which exists between majority and minority shareholders, the possibility remained that a cause of action against the Zahorchaks could yet be stated.[3]

With regard to the purchaser-defendants, however, the court below determined that leave to amend ought not to be granted. The complaint was accordingly dismissed with prejudice. Appellant does not challenge the decree of the lower court insofar as it sustained the preliminary objection in the nature of a demurrer. Indeed, his brief to this Court concedes that the original complaint failed to state a cause of action as to any of the defendants. Appellant's sole contention is that, in its decree sustaining the preliminary objections, the court below committed reversible error in dismissing the complaint against the purchaser-defendants without leave to amend.

In its opinion in support of the decree dismissing the complaint, the court en banc stated: "As to the purchaser-defendants, however, no leave for amendment is in order. There is no hint in the averments before the Court in the Complaint that the purchasers were anything but bonafide or that they have done anything to injure the plaintiff. Even if the sale of the property to them was done without the proper authorization, there are no allegations of their knowledge or complicity in the impropriety. Such a question and dispute about compliance with correct corporate procedure would clearly be between the shareholder and the corporation, and should

3. In an amended complaint, timely filed, as against the Zahorchaks, appellant made the following additional averments: (a) that the realty which was the subject of the transfer constituted the sole asset of the corporation; (b) that authorization of the sale by the board of directors and the shareholders was not obtained in the manner prescribed by § 311, subd. B of the Business Corporation Law, Act of 1933, May 5, P.L. 364, art. III, § 311, subd. B, as amended, 15 P.S. § 1311, subd. B; (c) that plaintiff had not been given notice of the impending sale as required under § 311, subd. B, and that, for these reasons, the purported sale was void and of no effect.

not be allowed to cloud the title and forestall the taking of possession by an innocent purchaser. Therefore, leave to amend with respect to Carl Lubetsky, Louis Zelekovitz and Morris Lubetsky shall not be granted."

It is fundamental that opportunity to amend a defective complaint must be granted unless there exists no reasonable possibility that a cause of action can be made out upon a better statement of facts. *Glenn v. Point Park College,* 441 Pa. 474, 483, 272 A.2d 895, 900 (1971); *Quaker City v. Delhi-Warnock,* 357 Pa. 307, 312, 53 A.2d 597, 600 (1947); *Winters v. Pennsylvania R. Co.,* 304 Pa. 243, 247, 155 A. 486, 487 (1931).

The essence of appellant's claim in this court is that a sale of a corporation's sole asset in violation of § 311, subd. B of the Pennsylvania Business Corporation Law, Act of 1933, May 5, P.L. 364, Art. III, § 311, subd. B, as amended, 15 P.S. § 1311, subd. B, is void, and therefore, ineffectual to convey legal title. He states that this was in fact the vice of the transaction here involved and that, therefore, the status of the purchaser-defendants, whether bona fide or otherwise, is irrelevant to the stating of a cause of action against them.

Section 311, subd. B of the Business Corporation Law (hereinafter the "B.C.L.") provides in pertinent part:

"A sale, lease, or exchange of all, or substantially all, the property and assets . . . of a corporation, if made neither (1) in the usual and regular course of its business . . . may be made upon such terms and conditions and for such considerations . . . as may be authorized in the manner hereinafter provided in this subsection. The board of directors *shall* adopt a resolution recommending such sale, lease or exchange, and directing the submission thereof, to a vote of the shareholders entitled to vote in respect thereof at a meeting which may be either an annual meeting of the shareholders or a special meeting of the shareholders

entitled to vote . . . written notice stating that the purpose, or one of the purposes, of such meeting is to consider the sale, lease, or exchange of all, or substantially all, the property and assets of the corporation, *shall* be given to each shareholder of record . . at least ten days prior to the date of the meeting, in the manner provided by this act."

(Emphasis added)

Appellant argues that the legislative choice of the word "shall" in the above-quoted provision evidences that the procedures prescribed by § 311, subd. B are mandatory in nature and that, therefore, a transfer made in violation of the statutory requirements is illegal and void *ab initio*. Of this we are unpersuaded.

> " 'Except when relating to the time of doing something, statutory provisions containing the word "shall" are usually considered to be mandatory, but it is the intention of the legislature which governs, and this intent is to be ascertained from a consideration of the entire act, its nature, its object and the consequences that would result from construing it one way or the other' ". *Francis v. Corleto*, 418 Pa. 417, 428, 211 A. 2d 503, 509 (1965) quoting *Pleasant Hills Borough v. Carroll*, 182 Pa.Super. 102, 106, 125 A.2d 466, 468 (1956).

The legislatures of a majority of states regulate a corporation's power to dispose of all or substantially all of its assets by means of legislation similar to § 311, subd. B. The generally viewed purpose of such provisions is to insure the freedom of the majority of shareholders to act in what they consider to be the best interests of the corporation while at the same time protecting the essential right of the minority stockholders to express their views and to preserve their rights as dissenters. *Scientific Living Inc. v. Basalyga*, 67 Lack.Jur. 1 (1966), aff. per curiam 424 Pa. 637, 227 A.2d 498 (1967); *Ribakove v. Rich*, 13 Misc.2d 98, 173 N.Y.S.2d 306 (1958); *Texas Co.*

*v. Z & M Independent Oil Co., Inc.*, 156 F.2d 862 (2nd Cir. 1946); *Boozer v. Blake,* 245 Ala. 389, 17 So.2d 152 (1944); *Mackenzie v. Taggart,* 101 Colo. 357, 73 P.2d 978 (1937). See annotation, 58 A.L.R.2d 784 (1958).[4]

There is, however, no public interest of substance which is jeopardized by a transfer not in compliance with the statute, *Maxler v. Freeport Bank,* 275 Pa. 510, 514, 119 A. 592, 594 (1923); 19 Am.Jur.2d 404–05, § 1528; and this fact militates against the conclusion that in enacting § 311, subd. B the legislature intended that a transfer which is defective solely because it is violative of the requirements of this provision would be a nullity and of no effect. Properly construed, the word "shall"

4. While a minority shareholder cannot prevent the will of the majority from operating, neither can he be compelled to accept the terms of what he considers to be, for whatever reason, unacceptable disposition of the bulk of corporate assets. Sections 311, subd. B and 515 of the BCL comprise a comprehensive scheme designed to permit a shareholder who objects to a majority-approved exchange of all or substantially all of the corporation's assets to register his dissent and to obtain, upon demand, the appraised fair value of his shares at the time of transfer. See *Guerber v. Whitehead & Kales Co.,* 42 Pa.D. & C.2d 41 (C. P. Lehigh Co., 1967); see also *Maxler v. Freeport Bank,* 275 Pa. 510, 513–14, 119 A. 592, 593–594 (1923); *Koehler v. St. Mary's Brewing Co.,* 228 Pa. 648, 655, 77 A. 1016, 1018–1019 (1910). See also *Sell,* 43 Pa.B.Q. 388 (1972).

¶ It should be noted that, as appears from the face of the complaint, the instant suit was brought as a direct action by appellant as an individual on his own behalf and not as a shareholder's derivative action on behalf of the corporation. Under the facts of this case, this was the proper mode of suit. "If the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, . . . it is an individual action." 13 Fletcher Cyclopedia Corporations (Perm.Ed.) § 5911. See *Reifsnyder v. Pittsburgh Outdoor Advertising Co.,* 405 Pa. 142, 147, n. 4, 173 A.2d 319, 321, N.Y. (1961). Damages sustained by a minority shareholder because of violation of § 311, subd. B of the BCL are a direct injury to the minority shareholder *as a shareholder.* This is so because an exchange of property effected in circumvention of § 311, subd. B would deprive a minority shareholder of his right to voice his dissent and thereby to obtain the rights relative to appraisal and sale of his shares which are guaranteed to him under §§ 311, subd. B and 515. See 58 A.L.R.2d 784, 789 § 3 and authorities cited therein.

in § 311, subd. B is directory only, for it is sufficient to protect the rights of minority shareholders that a non-conforming transfer be deemed voidable (under proper circumstances) by an aggrieved stockholder, rather than void *ab initio*.[5] See *Solorza v. Park Water Co.*, 86 Cal. App.2d 653, 195 P.2d 523 (1948). We know of no decision in any other jurisdiction which has held to the contrary in construing similar statutory requirements. Thus, although rescission may in some instances be an appropriate remedy, it is not, as the court below recognized, when the rights of third parties have intervened and the transaction has been completed. *Solorza v. Park Water Co., supra.* There are few reported cases from other jurisdictions in which the remedy of rescission has been awarded. In each, such relief was granted only where the transfer had not yet been completed, or upon a showing that the vendee had no equitable rights superior to those of the aggrieved shareholder. See e. g. *Scientific Living, Inc. v. Basalyga*, supra at 7; *Cachules v. 116 East 57th Street, Inc.*, Sup., 125 N.Y.S.2d 97 (1953); *Wegman v. Levinson Shoe Mfg. Co., Inc.*, Sup., 195 N. Y.S. 535 (1922).

The court below was in error, however, in denying appellant the opportunity to amend his complaint against the purchaser-defendants so as to aver that these defendants were other than bona fide purchasers for val-

5. To hold that a statutorily prescribed procedure is directory does not mean that it is optional; to be adhered to or not at will. *Pleasant Hills Borough v. Carroll*, 182 Pa.Super. 102, 106, 125 A. 2d 466, 469 (1956). The distinction between a mandatory and a directory statute lies in the effect of noncompliance upon the transaction involved—not in the liability of the person who has violated the statute. Failure to conform to a mandatory procedure renders the regulated activity a nullity. Strict compliance with a directory provision, on the other hand, is not essential to the validity of the transaction or proceeding involved. *Prichard v. Willistown Township School District*, 394 Pa. 489, 497, 147 A. 2d 380, 385 (1959); *American Labor Party Case*, 352 Pa. 576, 579, 44 A.2d 48, 49 (1945); *Deibirt v. Rhodes*, 291 Pa. 550, 140 A. 515 (1928).

ue. While the original complaint was defective in this regard, there exists nothing upon its face from which the court could have concluded with reasonable certainty that a satisfactory amendment was not possible. In accordance with the liberality with which amendments are allowed subsequent to the sustaining of a demurrer, appellant is entitled to an opportunity to present a better statement of facts upon which relief could be granted.[6]

The decree of the court of common pleas is modified so as to permit the filing of an amended complaint against Carl Lubetsky, Louis Zelekovitz, and Morris Lubetsky within 20 days of the date of the filing of this opinion, and as so modified is affirmed.

Each party to bear own costs.

ROBERTS, J., filed a concurring opinion.

MANDERINO, J., filed a dissenting opinion in which NIX, J., joins.

ROBERTS, Justice (concurring).

In my view, the majority's analysis goes awry when it stumbles over such obfuscating abstractions as "mandatory"-"directory" and "voidable"-"void ab initio." Neither the protection of the interests of corporate shareholders nor the furtherance of certainty in corporate transactions is advanced thereby.

---

6. Although appellant contends that the amended complaint already filed against the Zahorchaks (see note 1, supra) contains averments sufficient to state a cause of action against the purchaser-defendants, the absence of an allegation that they were anything other than bona fide purchasers would be as indicated above, fatal to the complaint. Moreover, to establish a violation of § 311, subd. B of the BCL, appellant must also be capable of averring that the sale of the real estate in question was not effected in the usual and regular course of the defendant corporation's business. Such an allegation is, likewise, absent from the proposed amended complaint.

In section 311, subd. B of the Business Corporation Law,[1] the Legislature granted to shareholders important procedural guarantees in certain fundamental corporate transactions. The procedure there specified was designed to insure fair and honest dealing by directors and officers in sales, leases, or exchanges of all or substantially all of a corporation's assets by requiring shareholder approval of the transaction. As a limitation on the power of directors and officers, these procedures surely are not optional with those very directors and officers. I fear that, by labelling the command of section 311, subd. B "directory," the majority has in fact made them optional.

The precise issue in this case, however, is the availability of a remedy to an aggrieved shareholder against the transferee in a non-complying transaction. After the transaction has been consummated,[2] the legitimate expectations of the transferee and the public interest in certainty in commercial transactions surely demand legal recognition and, in certain circumstances, may outweigh the interest of an aggrieved shareholder in upsetting a completed transaction.

Therefore, I would hold that a court of equity, upon the suit of a shareholder, may decree the recission of a sale, lease, or exchange of all or substantially all of the assets of a corporation for failure to comply with the procedures of section 311, subd. B unless the transferee is a purchaser for value acting in good faith and without notice of noncompliance. Furthermore, I would hold that, if a transferee knows or has reason to know that a sale, lease, or exchange of all or substantially all of a corporation's assets is involved, the requirements of good faith and lack of notice are not satisfied unless he has

1. Act of May 5, 1933, P.L. 364, art. III, § 311, subd. B, as amended, 15 P.S. § 1311, subd. B (1967).

2. I express no view on remedies that are available to shareholders before consummation of the transaction.

reasonably determined, upon examination of duly authenticated documentation, that the commands of section 311, subd. B have been obeyed.

Accordingly, an essential allegation in a complaint seeking such relief is that the transferee was not a purchaser for value acting in good faith and without notice of noncompliance. Because appellant should have been permitted to amend his complaint to plead such an allegation, I concur in the result.

MANDERINO, Justice (dissenting).

I dissent. The majority's interpretation of Section 311, subd. B of the Business Corporation Law has nullified the very purpose for that legislation: the protection of minority shareholders.

Section 311, subd. B prevents a corporation from selling *all or substantially all* of its property and assets without receiving the approval of shareholders by following a specified procedure. The majority holds that the procedure may be disregarded and that the alleged sale of *all or substantially all* of the corporation assets is valid. In this case, the failure to comply with the statutory procedure may not seem important since there are only a few shareholders and the real estate allegedly sold was the sole asset of the corporation. The holding of the majority, however, would be just as applicable to a large corporation whose assets are many and varied. The evaluation of corporation assets in many cases is a difficult and time consuming matter. Intangible as well as tangible corporate assets may be located in many parts of the state or many parts of the country. The assets may consist of real estate, machinery, equipment, inventory, accounts receivable, and many other types of property which have value.

An evaluation by minority shareholders as to whether they will be harmed by the sale of the corporate assets may involve time consuming and complex considerations.

The minority shareholders are entitled to a full opportunity to protest and to attempt to persuade other shareholders that the sale is not in the best interests of the shareholders.

In some corporations—maybe the one before us—a remedy against other shareholders may be totally inadequate if corporate assets worth $1,000,000 have been sold for $200,000. The minority shareholders may not have an adequate remedy unless the transaction is rescinded.

It might be argued that the minority shareholders are not entitled to rescission unless they can establish the inadequacy of the consideration and its unfairness to minority shareholders. This places what could be a considerable financial burden on minority shareholders whose statutory rights have been ignored. In some cases, thousands or millions of dollars might be necessary. On the other hand, the task of the minority shareholders would be much simpler at a corporate meeting of shareholders where an opportunity might exist to persuade other shareholders to disapprove the transaction.

It should make no difference whether the purchasers are bona fide purchasers or not. Those persons—majority shareholders—who conveyed title to the purchasers had no authority to convey the title. Under such circumstances, a bona fide purchaser for value does not acquire title.

The rights of minority shareholders in corporations should be treated in a manner similar to the rights of the public in matters involving municipal corporations. Minority shareholders frequently have no connection with the corporation or the majority shareholders except as investors. Indeed, many times they have never met the majority shareholders. The sale in this case should be as void as a sale of municipal assets by a municipal corporation would be in the absence of compliance with statutory procedures.

In this case, if the sale is rescinded, the purchasers may have a cause of action against the majority shareholders. In any event, the minority shareholders should not suffer.

In my opinion there was no need for the complaint against the purchasers to contain an allegation that the purchasers were not bona fide purchasers. Neither was it necessary for the complaint to allege that the transaction was not "the usual and regular course" of business. This should be a matter of defense. The complaint alleges that the sale took place without following statutory requirements. That is sufficient.

For these reasons, the order of the lower court dismissing the complaint of the plaintiff against the purchasers should be reversed.

NIX, J., joins in this dissenting opinion.