## Ellis v. National Capitol Life Insurance Co.

*Harry M. Sablosky*, for plaintiff.

*Alan E. Boroff*, for defendant.

DITTER, J., December 18, 1964.—We are now concerned with various preliminary objections to an amended complaint in equity which alleges that plaintiff shareholder has been deprived of his rightful place on defendant corporation's board of directors. A petition for security for costs was filed by defendant corporation and this was consolidated with the preliminary objections for the purpose of argument.

Defendant insurance company is organized on a stock basis and plaintiff, a member of the Philadelphia bar, is the owner of a little more than one percent of the common shares. Prior to its annual election in April, 1964, plaintiff made several demands on its officers to see the share register and various other records relating to stock ownership and the company's financial activities. This information was apparently sought in order that plaintiff might solicit proxies from other shareholders before the coming election of direc-

tors. Most of the plaintiff's demands were refused, although he was given a list of names entitled "Stockholders List." However, he avers it does not contain the number of shares owned nor even the names of all of the shareholders. Nevertheless, plaintiff was able to obtain proxies representing four and six-tenths percent of the outstanding stock in addition to his own holdings.

When the annual meeting began, plaintiff moved for an immediate adjournment because the names and holdings of the shareholders had not been made available for the five-day period preceding the election, as required by one of the by-laws. This motion was denied and the meeting continued. Plaintiff offered his proxies and when those accepted by the corporation were added to his own shares, plaintiff felt assured of a position on the board of directors under the principles of cumulative voting. Unfortunately, his name was never placed in nomination.

Plaintiff alleges that defendants refused to allow his nomination and refused to count the ballots cast in his favor. At argument, counsel for defendant indicated that the nominations were opened, the company slate was nominated, and after a ten-second pause, the nominations were closed. While ten seconds may be a seemingly interminable time for a defendant waiting for the jury foreman to speak, to the plaintiff's nominator, who may have had a mouthful of water or may have been recovering from a sneeze, it apparently was meteoric. It seems to be an unreasonably short time in view of the notice given to the corporation of a pending proxy fight. In any event, the failure to disclose the names and holdings of the shareholders and the manner in which the election was held suggests that the entire election was improper.

Defendant has filed nine preliminary objections to the complaint, the first of which is that a shareholder's

direct cause of action has been improperly joined with a shareholder's derivative action and therefore the complaint should be stricken. Defendant would have us find a derivative action here because one of the exhibits attached to the complaint and one of the allegations of the complaint imply that there may have been mismanagement of corporate assets. The exhibit is a copy of a letter which plaintiff had prepared for dissemination to the other shareholders as an aid in soliciting their proxies. However, one of the individual defendants, Dillinger, who is the president of the corporate defendant, talked plaintiff out of sending it. This exhibit and others to which objection is made are harmless surplusage; copies of documents referred to in the body of the complaint. They provide background to the cause of action set forth, namely, the improper actions of defendants which may have deprived plaintiff of his rightful seat on the board of directors. As this court mentioned in Webb v. Curtis, 64 Montg. 180, 184 (1948), a party should not object to receiving complete notice of what his opponent intends to show.

Plaintiff's only allegation which refers to corporate waste is contained in a listing of his reasons for wishing to see the corporate records. A derivative action may not be stated in such an obscure manner: Pennsylvania Rules of Civil Procedure 1506. The allegation of the complaint determines whether an action is direct or derivative: Reifsnyder v. Pittsburgh Outdoor Advertising Co., 405 Pa. 142 (1961). Since defendant's preliminary objections, nos. one, four, five, six and eight, as well as defendant corporation's petition for security for costs, all rely on the existence of such an action, they have no merit and are dismissed.

The second objection states that the complaint should be stricken because four of its exhibits are scandalous and impertinent under Pa. R. C. P. 1017-(b) (2). Scandalous matter consists of any unneces-

sary allegation which bears cruelly upon the moral character of an individual, or states anything which is contrary to good manners, or anything which is unbecoming to the dignity of the court to hear, or which charges some person with a crime, not necessary to be shown. Impertinence is the averment of a fact or facts which are irrelevant to the material issues made or tendered, and which, whether proven or not, or whether admitted or not, can have no influence in leading to the result of the judicial decree: 2 Anderson Pa. Civ. Prac. §§1017.26, 1017.30, and citations therein.

One exhibit is the memorandum to shareholders prepared by plaintiff, mentioned earlier. By means of a series of questions, the memorandum leaves an inference of poor management by the present company officials but certainly nothing morally degrading. There is no hint of illegal or unethical activities and mere errors in judgment are no blemish on a man's character. Another exhibit consists of a memorandum of an agreement between Dillinger and Ellis to submit two claims, the nature of which are undisclosed, to arbitration. A third exhibit is a memorandum of an agreement that Dillinger would answer the questions posed in the shareholders' memorandum in return for Ellis' promise not to send out the shareholders' memorandum or pursue an action in mandamus then pending. The last is a letter from Dillinger to Ellis purporting to answer the questions. All appear to be free of any matter that could be termed "scandalous." As to their pertinence, each exhibit represents a brick in the wall erected by the company officials between Mr. Ellis and his directorship and may be of value in subsequent hearing, although they may not be essential to the complaint. At their worst they make the complaint too thick with extra pages.

Defendants then move for a more specific pleading

because the "complaint fails to set forth the reasons and purposes for which plaintiff demands to examine and audit the books and records of the corporation." In the complaint, plaintiff listed three reasons, i.e., to learn the names of the majority stockholders so that he might solicit their proxies, to form some sort of protection committee to act in the best interests of his investments, and to ascertain if large amounts of corporate assets were being wasted as reported by informants. The desire to form a committee to protect a stockholders' investment is a sufficient reason to be afforded the right of inspection: Kahn v. American Cone & Pretzel Company, 365 Pa. 161, 167 (1950).

It is a well-settled general rule that apparent mismanagement or misconduct by corporate officers provides a sufficient, proper, and reasonable purpose or objective for inspecting corporate records: Hagy v. Premier Manufacturing Corporation, 404 Pa. 330, 335 (1961).

The last two objections are in the nature of a demurrer. One objection proposes that certain of the requests for relief be dismissed because they bear no "relationship or relevancy" to the allegations of the complaint. Overlooking the fact that relevancy or the lack of it is not a proper ground for a demurrer, we will point out that Pa. R. C. P. 1021, applicable here by reason of rule 1501, only requires that the pleader state the relief "to which the party deems himself entitled." Aside from the procedural requirement that there be a claim or prayer for relief, the content of the prayer is left to the fancy of the pleader. As it is, plaintiff has prayed that he be declared a member of the board of directors which stands on all fours with our analysis of the complaint. In addition, plaintiff suggests a method for determining which of the presently occupied board seats he will take over. He renews his request for inspection of the corporate records. He

seeks counsel fees. He requests that the corporation be enjoined from altering its capitalization and that the individual defendants be enjoined from disposing of their interest in the corporation. Finally, plaintiff prays for such other relief as the court may feel proper. Since the mere statement of these prayers hurts no one and since they do not affect the defendant's answer, we will not disturb them.

The brief of defendant, however, adds that plaintiff has an adequate remedy at law in mandamus and quo warranto but ignores the relationship, the common thread, that runs through the complaint. We would hear this matter if for no other reason than to save plaintiff from bringing multiple actions.

Finally, defendant feels that an adequate remedy at law exists under the Insurance Department Act of May 17, 1921, P. L. 789, 40 PS §1 et seq., and the Insurance Companies Act of May 17, 1921, P. L. 682, 40 PS §341, et seq., because these acts "empower the Insurance Commissioner of the Commonwealth of Pennsylvania, either acting on his own accord or upon complaint to examine defendant company's books, records, accounts and vouchers to ascertain whether the company has complied with the provisions of the law and to examine the facts related to its business methods and management and to take such further action as may be necessary." The thrust of defendants' argument is apparently that the insurance commissioner is in a position to get all the information desired by plaintiff and to seat plaintiff among the other directors. We have found no such powers given to the insurance department; instead, all of the commissioner's powers seem to stem from a duty to protect policyholders, not stockholders.

### Order

And now, December 18, 1964, upon consideration of oral arguments and the briefs of counsel, defend-

ants' preliminary objections are dismissed and defendant is granted leave to plead over within 20 days. The defendant corporation's petition for security for costs is dismissed.