## Weston v. Reading Company

*Bernard J. Smolens*, for plaintiffs.

*Ernest R. von Starck and Fairfax Leary, Jr.*, for defendants.

SPAETH, J., January 17, 1967.—Reading Company and Baltimore & Ohio Railroad Company have filed preliminary objections to the complaint.[*]

The complaint may be summarized generally as follows: Plaintiffs are minority shareholders of Reading. Reading is controlled by B & O and C & O, which together own 49 per cent of Reading's voting stock, and B & O is controlled by C & O, which owns 90 percent of B & O's voting stock. C & O has used the power it thus has to nominate and elect Reading's officers and directors, who have operated Reading not in Reading's interests, but B & O's and C & O's, to the end that Reading will be made poorer and may be merged more easily into the B & O-C & O system. This may be illustrated by certain transactions, each disadvantageous to Reading: In 1963, Reading transferred certain warehouse and terminal facilities to B & O and some rehabilitated boxcars to a C & O subsidiary; in 1964, Reading leased to B & O some reconditioned hopper cars; and at a time not stated, Reading leased some other railroad equipment from B & O. Accordingly, B & O and C & O must be enjoined from voting their Reading stock, from continuing their mismanagement of Reading and from misusing Reading's assets for their advantage; they must account not only with respect to the transactions

---

[*] Chesapeake & Ohio Railway Company has also filed preliminary objections, which challenge the jurisdiction of this court, and each party has filed various motions regarding discovery; consideration of these was continued pending decision on Reading's and B & O's preliminary objections.

just described, but with respect to all intercorporate transactions that have resulted in injury to Reading; and they must pay such sums as the accounting shows are due.

Reading and B & O will quarrel with this summary. For example, they say that the complaint also charges that their stock in Reading was illegally acquired, and that some of the complaint is so generally worded that one cannot tell what it means and, hence, cannot summarize it. For present purposes, however, the summary as stated will do.

Reading's and B & O's preliminary objections are not quite alike, but among the issues they raise are these: First, the objections say that the Interstate Commerce Commission has exclusive or primary jurisdiction to determine whether B & O and C & O have properly acquired control of Reading, and whether B & O and C & O may be enjoined from voting their Reading stock. Second, the objections say that the transactions between B & O, C & O, and Reading have not been pleaded specifically enough to state either when they occurred or why they should be considered to have been illegal. Third, the objections demur to the complaint. And finally, they say that plaintiffs have not shown capacity to sue.

Interesting as many of the questions presented by the preliminary objections are, and they are interesting and may later become critical, it is necessary and hence appropriate at this point to consider only one issue, which fits most easily under the demurrer, and which is raised by paragraph 3 of the complaint.

Paragraph 3 says: "Plaintiffs bring this action on behalf of themselves and, representatively and derivatively, on behalf of themselves and all other stockholders of Reading similarly situated. Reading has approximately 2,800,000 shares of voting stock outstanding held by shareholders so numerous as to make

it impractical to bring them all before the Court. The rights herein sought to be enforced involve common questions of law and fact affecting the rights of all shareholders of Reading and common relief is sought".

The difficulty with this paragraph is the opening sentence. An action cannot be brought "on behalf of [shareholders] . . . representatively and derivately. . . ." In a representative action, a shareholder sues in his own right and on behalf of others like himself; he must, therefore, show an injury to himself as compared to an injury to the corporation. In a derivative action, the shareholder complains of no injury to himself, but rather of an injury to the corporation, which he is attempting to redress because the corporation will not: Reifsnyder v. Pittsburgh Outdoor Advertising Co., 405 Pa. 142 (1961); Reader, "Suits Against Corporations", 12 PS, pages 1-4, preceding §1221.

Because of these differences, there used to be some question whether a representative action and a derivative action could be joined: Hornsby v. Lohmeyer, 364 Pa. 271, 274 (1950). Under Pennsylvania Rule of Civil Procedure 1508, however, if both actions are cognizable in equity, they may be joined, provided each is stated in a separate count: Wolf v. Young Supply Co., 19 D. & C. 2d 404, 409-10 (C. P. Delaware Co., 1959).

The difficulties created by not pleading the two actions separately may be illustrated by considering the complaint here. For example: Why was the transfer of the warehouse and terminal facilities wrong? The complaint says because the consideration "was grossly inadequate and resulted in a substantial loss to Reading". Assuming this averment to be sufficiently specific, why do plaintiffs say it states a "representative" action? No injury to them is suggested; only an injury to Reading. Perhaps plaintiffs recognize this and mean that with respect to this transaction their complaint is "derivative". If so, why must they assert

it on Reading's behalf? In a derivative action, plaintiff must plead and prove that he asked the corporation to assert its rights and that it refused, or that if he had asked, it would have refused: Pa. R. C. P. 1506. Plaintiffs here only say that C & O and B & O dominate Reading and its officers and directors; they do not plead a request that Reading assert its rights; perhaps they do imply that the request would have been futile, but implication is not allegation.

To illustrate again: Plaintiffs pray for an accounting of ". . . transactions between defendants which have resulted in loss or injury to Reading", and for an order "That defendants pay such sums as shall be found due as a result of such accounting". But pay to whom? If to Reading, how is the action "representative?" And if to plaintiffs, why?

Similar questions may be asked of each act referred to in the complaint in uncomplimentary terms. Plaintiffs' answer to such questions, that ". . . there is only the single set of operative facts, defendants' wrongful exercise of control over Reading, from which may be distilled as many rights of action as these facts warrant", is insufficient. For who is to do the distilling, if not plaintiffs? The art of drafting a complaint may be said to be to plead with such exactness that one's opponent in answering must make damaging admissions, and yet to be vague enough so that if something surprising turns up at the trial, somewhere in the complaint there will be room for it. Here, however, plaintiffs have saved so much room that their entire complaint is vague, not just its edges. The complaint must, therefore, be dismissed.

Plaintiffs will, however, be given leave to plead again; for they may be able to plead either a representative cause of action, or a derivative one, or both. If plaintiffs can plead both causes of action, and if they distinguish in their amended complaint between them

with sufficient specificity, it will become apparent whether they do have capacity to seek relief, and if they do, whether what they seek can or should be granted only by the Interstate Commerce Commission; it will also become apparent to what extent plaintiffs and defendants need discovery.

Accordingly, the court enters the following:

### ORDER

And now, January 17, 1967, the demurrers filed by defendants Reading Company and Baltimore and Ohio Railroad Company are sustained, and the complaint is dismissed with leave to file within 20 days an amended complaint in accordance with the opinion accompanying this order.

