J-S54033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KITTY WARD TRAVEL, INC., AND MARIANNE VICKERS | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| THOMAS F. AND THERESA WARD, MAUREEN RENNIE, AILEEN REINER | : : : | |
| APPEAL OF: MARIANNE VICKERS | : | No. 591 EDA 2015 |

Appeal from the Judgment Entered February 9, 2015
In the Court of Common Pleas of Delaware County
Civil Division No(s).: 10-00556

BEFORE: BOWES, PANELLA, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:               **FILED APRIL 22, 2016**

Appellant, Marianne Vickers, appeals from the order[1] entered in the Delaware County Court of Common Pleas entering summary judgment in favor of Appellees, Thomas F. and Theresa Ward, Maureen Rennie, and Aileen Reiner.  Marianne contends the court should have construed her claims as direct claims and not derivative claims brought on behalf of Kitty Ward Travel, Inc. ("Kitty"), a Pennsylvania corporation.  We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] "[I]n an action involving multiple defendants, . . . an order granting summary judgment as to one party is treated as appealable as of right only after the disposition of the claims involving the remaining parties." **K.H. v. J.R.**, 826 A.2d 863, 869 (Pa. 2003).  "Thus, . . . in the context of a single action, a notice of appeal filed from the entry of judgment will be viewed as drawing into question any prior non-final orders that produced the judgment." **Id.** at 871.

We glean the facts from the record. Kitty is a Pennsylvania corporation with the following five shareholders and shares of stock:

Marianne Vickers:    16.67
Bridget Ward:        20.83
Thomas Ward:         20.83
Maureen Rennie:      20.83
Aileen Reiner:       20.83

Ex. B to Compl., 1/19/10. Thomas and Maureen were directors and officers and Theresa was an employee of Kitty.

In February 2009, Bridget, Marianne, and Aileen reorganized Kitty by appointing Aileen chairman, and Bridget vice-chairman and president. They also removed Thomas and Maureen as officers and fired Thomas, Theresa, and Maureen. The hostile corporate takeover resulted in multiple lawsuits, including the instant suit.

On January 19, 2010, Kitty, Bridget, and Marianne (collectively "Plaintiffs"), sued Thomas, Maureen, and Theresa (collectively "Defendants"), raising the following ten claims against one or more of the individual defendants.

For count I, Bridget and Marianne, on behalf of Kitty, claimed Thomas and Maureen breached their fiduciary duty by, *inter alia*, misappropriating corporate funds and wasting corporate assets. ***See generally*** Compl., 1/19/10, at ¶ 76(a)-(h) (alleging multiple violations of various bylaws and

Pennsylvania statutes).[2] "As a direct and proximate result of [their] actions, [Kitty] has suffered substantial harm and damages." *Id.* at ¶ 78. Bridget and Marianne contended Thomas and Rennie owed at least $50,000 in compensatory damages to Kitty. *Id.* at 16-17 ("Plaintiffs demand judgment in favor of [Kitty] and against" Thomas and Maureen "to be paid to [Kitty's treasury] and distributed to the current shareholders.").

As for count II, Plaintiffs sued Defendants for improperly retaining, selling, or giving away corporate assets. Plaintiffs moved for, at a minimum, $50,000 in damages, Defendants to return Kitty's corporate assets, and an accounting of any assets Defendants sold or gave away. *Id.* at 17-18.

With respect to count III, Plaintiffs sued Defendants for breaching a fiduciary duty to Plaintiffs by, *inter alia*, engaging in self-dealing, transferring corporate assets improperly, and not acting in Kitty's best interests. *Id.* at 18-20. Specifically, Plaintiffs claimed "Defendants owed a fiduciary duty of good faith, fair dealing, due care, loyalty and full, candid and adequate disclosure to Plaintiffs." *Id.* at 18. Defendants allegedly breached those duties as follows:

> a. Repeatedly engaging in instances of self-dealing without the knowledge and consent of other Plaintiffs, fellow board member and shareholders in violation of Article V, Section

---

[2] For ease of disposition, we cite to either the specific paragraph or page of the complaint.

5.01 and Article IV of [Kitty's] Bylaws, 15 Pa. Con. Stat. §§512,[3] 523,[4] 1712,[5] and 1932.[6]

b. Impairing Plaintiffs' ability to compete in the travel services industry in violation of Article IV and Article V, Section 5.01 of [Kitty's] Bylaws; and 15 Pa. Con. Stat. §§512, 523, 1712, and 1932;

c. Diverting corporate opportunities from [Kitty] in violation of Article V, Section 5.01 and article IV of [Kitty's] Bylaws; 15 Pa. Con. Stat. §§512, 523, 1712, and 1932.

d. Wasting assets of [Kitty] and Plaintiffs in violation of Article V, Section 5.01 and Article IV of [Kitty's] Bylaws; and 15 Pa. Con. Stat. §§512, 523, 1712, and 1932.

e. Undermining and sabotaging the interests of Plaintiffs in violation of Article V, Section 5.01 and Article IV of [Kitty's] Bylaws; and 15 Pa. Con. Stat. §§512, 523, 1712, and 1932; and

f. Diverting opportunities to generate greater revenue from [Kitty] in violation of Article V, Section 5.01 and Article IV of [Kitty's] Bylaws; and 15 Pa. Con. Stat. §§ 512, 523, 1712, and 1932.

Compl. at 18-19.[7]  Two of the paragraphs within this count also reference

the duties of the individual shareholders.  *Id.* at ¶ 95 ("Defendants failed to

---

[3] Section 512 governs the standard of care a director or officer owes a domestic corporation.  15 Pa.C.S. § 512.

[4] Section 523 addresses derivative actions by shareholders.  15 Pa.C.S. § 523 (entitled, "Actions by shareholders or members to enforce a secondary right.").

[5] Section 1712 similarly discusses the standard of care a director or officer owes a business corporation.  15 Pa.C.S. § 1712.

[6] "Voluntary transfer of corporate assets" is the title of 15 Pa.C.S. § 1932.

act independently to protect Plaintiff shareholders"); ¶ 96 ("Defendants failed to assure that no conflicts of interest exist, or else to assure that all conflicts would be resolved in the best interests of the shareholders."). Plaintiffs requested $50,000 or more in damages.

Count IV is a breach of contract claim brought by Plaintiffs against Defendants. Plaintiffs alleged Defendants breached the shareholders' agreement by, essentially, not acting in Kitty's best interests. Plaintiffs asserted Defendants owe an amount equal to three times the actual damages incurred by Plaintiffs. *Id.* at 21-22.

Count V is also a breach of contract claim raised by Bridget and Marianne against Thomas and Maureen. Bridget and Marianne claimed that Thomas and Maureen violated the shareholders' agreement by failing to sell their shares of Kitty to Bridget and Marianne. As relief, Bridget and Marianne asked that the court compel Thomas and Maureen to place their Kitty shares into escrow to facilitate the sale. *Id.* at 24.

For count VI, Bridget and Marianne sued Defendants for fraudulent misrepresentation. They alleged that Defendants distorted Kitty's sales and did not inform Bridget and Marianne that Kitty was operating at a loss. *Id.* at 23-24; *see also* Marianne's Brief at 25. Bridget and Marianne averred

---

[7] As noted *infra*, Marianne acknowledges that the complaint used the term "Plaintiffs" in the collective without always identifying each individual plaintiff. *See* Marianne's Brief at 23.

they relied on Defendants' misrepresentations to their detriment and thus are owed damages of at least $50,000. Compl. at 26. The paragraphs for this count do not explain how Bridget and Marianne were damaged personally and directly. *See id.*

Bridget and Marianne raised a claim of fraudulent misrepresentation on behalf of Kitty and against Thomas for count VII. They alleged Kitty owns a subsidiary corporation named Irish American International Tours ("Irish Tours"). *Id.* Bridget and Marianne averred that after Thomas was fired, he nonetheless continued to represent himself as affiliated with Irish Tours and changed Irish Tours' address to his personal home address. Bridget and Marianne asserted that customers of Kitty and Irish Tours relied on Thomas's misrepresentations and that Plaintiffs incurred costs in correcting those misrepresentations. *Id.* at 28. Accordingly, Plaintiffs moved for a minimum of $50,000 in damages.

Count VIII is also a claim raised by Bridget and Marianne on behalf of Kitty and against Thomas and Maureen. Plaintiffs claimed that Thomas and Maureen tortiously interfered with contractual relations by engaging in various activities to steal existing and prospective customers of Kitty and Irish Tours. *Id.* at 29-30. Plaintiffs therefore requested $50,000 in damages, at a minimum.

Regarding count IX, Bridget and Marianne sued Defendants for negligent misrepresentation. The basis for the claim was that Defendants

falsely advised Plaintiffs about Kitty's finances. ***See also*** Marianne's Brief at 26. Specifically, Bridget and Marianne alleged that Defendants falsely reported lower sales and thus filed a false tax return claiming Kitty operated at a loss:

> 166. At all material times hereto, Defendants represented to Plaintiffs that [Kitty] was solvent and that business was good. They also represented that all income was accounted for and declared.
>
> 167. Defendants knew and/or should have known that said representations were not accurate.
>
> 168. Plaintiffs[8] reasonably relied upon these fraudulent misrepresentations. As Board Members and directors, Plaintiffs were entitled to rely in good faith on the representations of Defendants as Plaintiffs reasonably believed that Defendants were reliable and competent in the matters presented. 15 Pa. Con. Stat. §§512, 1712 (2009).
>
> 169. Defendants knew and/or should have known that Plaintiffs would reasonably rely upon these representations.
>
> 170. Plaintiffs, at the time such representations were made, did not know the truth with regard to certain transactions, but believed the representations to be true and relied upon them. They were thereby induced to continue efforts to generate business, forego further inquiry and other business opportunities, as well as to call an emergency meeting of the Board and/or shareholders, to address these issues.

---

[8] As noted above, the complaint used defined terms inconsistently.

171. The representations were false,[9] and in fact sales were much higher than Defendants reported to Plaintiffs.

* * *

173. Defendants had knowledge of the actual financial condition of [Kitty] superior to that of Plaintiffs and had exclusive access to that knowledge, such that Defendants had a duty to advise Plaintiffs of the actual financial condition.

174. Plaintiffs justifiably relied upon Defendants' representations, as Defendants are directors and officers of [Kitty] whom Plaintiffs reasonably believed to be reliable and competent in the matters presented.

175. Such representations were made by Defendants as of Defendants' own knowledge and were known to be false when made, or were made by Defendants recklessly and without any knowledge that the same were true and careless of whether they were true or false and without any reasonable grounds to believe that they were true.

176. At the time such representations were made, Defendants to suspect the falsity of such representations, which facts and circumstances were unknown to Plaintiffs and were fraudulently suppressed and concealed from Plaintiffs by Defendants.

Compl. at 31. As a result, Bridget and Marianne claim the false representations damaged them and they are entitled to at least $50,000. *Id.*

Lastly, count X is a claim for an accounting brought by Plaintiffs against Defendants.

---

[9] We note that Marianne's brief used the phrase "materially false." Marianne's Brief at 26 (purportedly quoting complaint). The word "materially" does not exist in the complaint. *See* Compl. at ¶ 171.

On February 22, 2010, Maureen filed preliminary objections claiming, *inter alia*, that Bridget and Marianne lacked standing to assert the derivative claims at counts II, III, IV, VI, IX, and X.[10]  Maureen's Prelim. Objections to Plaintiffs' Compl., 2/22/10, at ¶ 48.  The court overruled Maureen's preliminary objections on April 23, 2010.

On June 14, 2010, Thomas and Theresa filed their answer and counterclaims against Plaintiffs.  That same day, they also filed a complaint raising cross-claims against Aileen.  Plaintiffs countered by filing cross-claims against Aileen on July 11, 2010.

Initially, one firm represented Kitty, Bridget, and Marianne.  Eventually Marianne retained different counsel, and the original firm withdrew.  Subsequently, the original firm filed petitions for leave to withdraw representing Kitty and Bridget claiming, *inter alia*, conflicts of interest and a breakdown in the attorney-client relationship.  The trial court granted the firm's petitions and stayed discovery for thirty days to permit Kitty and Bridget to obtain new counsel.  Order, 2/1/13.  Kitty and Bridget, however, never obtained new counsel.

---

[10] At that time, the parties differed on whether certain claims were direct or derivative.

On February 28, 2014, Defendants filed a motion for summary judgment[11] against Bridget and Marianne claiming they lacked standing to raise all ten claims. Defendants reasoned that Bridget's and Marianne's claims asserted an injury to or breach of duty by Kitty. They also alleged that there was no evidence that they breached any duty owed to Bridget or Marianne. Thus, Defendants concluded, the claims are derivative. Defendants anticipated that Bridget and Marianne would argue that even if the claims were derivative, they nonetheless had standing because Kitty is a closely held corporation. Marianne filed a response in opposition, which did not argue that the trial court should not apply *Hill* retroactively. On June 17, 2014,[12] the court granted Defendants' motion and dismissed with prejudice all claims raised by Bridget and Marianne.

Trial was scheduled for January 12, 2015. That day, no counsel appeared for Kitty and Bridget. Thomas, Theresa, and Maureen moved for judgment of *non pros* against Kitty and Bridget. Marianne had no objection, and the court granted the motion. N.T., 1/12/15, at 15. On January 28,

---

[11] We note Defendants' memorandum of law in support of their summary judgment motion directly quotes this Court's then-recent decision in *Hill v. Ofalt*, 85 A.3d 540 (Pa. Super. 2014), without any attribution, use of quotation marks, or "block quote" formatting. *See* Defs.' Mem. of Law in Support of Defs.' Mot. for Summ. J., 2/28/14, at 2-4, 6 (quoting, without citing, *Hill*, 85 A.3d at 548-49, 556). We do not endorse presenting—particularly without any attribution whatsoever—this Court's reasoning as one's own argument.

[12] The order was docketed on this date.

2015, the court dismissed as moot all remaining counterclaims and crossclaims.

On February 9, 2015, the court entered judgment. As noted above, with respect to Marianne's and Bridget's claims, judgment was entered in favor of Thomas, Theresa, and Maureen. For Kitty's claims, judgment was entered in favor of Thomas, Theresa, and Marianne. On February 20, 2015, Marianne timely appealed. The court did not order Marianne to comply with Pa.R.A.P. 1925(b), but it filed a Rule 1925(a) decision.

Marianne raises the following issues:

> Did [Marianne] assert direct claims against Appellees at Counts III [breach of fiduciary duty], VI [fraudulent representation,] and IX [negligent misrepresentation]?

> Did [Marianne] have standing to assert the derivative claims [at counts I (breach of fiduciary duty, waste of corporate assets, and misappropriation of funds), II (conversion), count IV (breach of contract), count V (breach of contract), count VII (fraudulent misrepresentation), count VIII (tortious interference with contractual relations), and count X (action for accounting at law)] in the Complaint either directly or on behalf of [Kitty]?

Marianne's Brief at 6.

In support of her first issue, Marianne raises three arguments, one for each claim. Initially, she argues Plaintiffs' claim for breach of fiduciary duty against Defendants is a direct claim. Marianne focuses on the count's use of the plural word "duties," and posits that Defendants owed different fiduciary duties to Marianne, as a minority shareholder, and Kitty, as a corporation.

- 11 -

*Id.* at 22. She notes that paragraphs ninety-five and ninety-six of the complaint reference the shareholders' interests, which further bolsters her argument that she raised a direct claim. Marianne alternatively contends she developed a direct claim for breach of fiduciary duty during discovery. *Id.* at 24. Specifically, Marianne claims that the majority shareholders owed her—a minority shareholder—a fiduciary duty. The majority shareholders, Marianne argues, violated that duty by transferring corporate assets improperly. *Id.* at 25.

Next, Marianne contends her fraudulent misrepresentation claim against Defendants was a direct claim. Marianne notes that Kitty is not identified as a plaintiff for this claim. *Id.* She alleges that Defendants' false representations created an injury distinct from any harm to Kitty. Marianne alleges that Defendants falsely claimed Kitty was losing money, which meant no actual harm to Kitty.

Lastly, Marianne relies on her fraudulent-misrepresentation-claim arguments in support of her contention that her negligent misrepresentation claim is also a direct claim. Notwithstanding the "negligent misrepresentation" label, Marianne argues her claim lies in fraud. We hold Marianne is due no relief.

The standard of review for an order resolving a motion for summary judgment follows:

> We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a

- 12 -

genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175, 1179 (Pa. 2012) (citation omitted); *accord NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 303 (Pa. Super. 2012).

Pennsylvania Rule of Civil Procedure 1506(a) sets forth the requirements for bringing a derivative action:

(a) In an action to enforce a [derivative] right brought by one or more stockholders or members of a corporation or similar entity because the corporation or entity refuses or fails to enforce rights which could be asserted by it, the complaint shall set forth:

(1) that each plaintiff is a stockholder or owner of an interest in the corporation or other entity.

(2) the efforts made to secure enforcement by the corporation or similar entity or the reason for not making any such efforts, and

(3) either

(i) that each plaintiff was a stockholder or owner of an interest in the corporation or other entity at the time of the transaction of which the plaintiff complains or that the plaintiff's stock or interest devolved upon the plaintiff by operation of law from a person who was a stockholder or owner at that time, or

> (ii) that there is a strong prima facie case in favor of the claim asserted on behalf of the corporation and that without the action serious injustice will result.

Pa.R.C.P. 1506(a).

Section 1717 of the Corporations and Unincorporated Associations Code governs standing:

> The duty of the board of directors, committees of the board and individual directors under section 1712 (relating to standard of care and justifiable reliance) is solely to the business corporation and may be enforced directly by the corporation or may be enforced by a shareholder, as such, by an action in the right of the corporation, and may not be enforced directly by a shareholder or by any other person or group. . . .

15 Pa.C.S. § 1717. Conversely,

> under established Pennsylvania law, a shareholder does not have standing to institute a direct suit for a harm that is peculiar to the corporation and [would normally] only [be] indirectly injurious to [a] shareholder. Rather, such a claim belongs to, and is an asset of, the corporation.

***Hill***, 85 A.3d at 548 (internal quotation marks, brackets, and citation omitted).

The ***Hill*** Court further explained as follows:

> To have standing to sue individually, the shareholder must allege a direct, personal injury—that is independent of any injury to the corporation—and the shareholder must be entitled to receive the benefit of any recovery. ***See*** [***Reifsnyder v. Pittsburgh Outdoor Adver. Co.***, 173 A.2d 319, 321 (Pa. 1961)]; ***Burdon v. Erskine***, 264 Pa.Super. 584, 401 A.2d 369, 370 (1979) (*en banc*) ("[a]n injury to a corporation may . . . result in injury to the corporation's stockholders. Such injury, however, is regarded as 'indirect', and insufficient to give rise to a

direct cause of action by the stockholder"); ***Fishkin v. Hi–Acres, Inc.***, 462 Pa. 309, 341 A.2d 95, 98 n. 4 (1975) ("[i]f the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, it is an individual action") (internal quotations and citations omitted); ***White v. First Nat'l Bank***, 252 Pa. 205, 97 A. 403, 405 (1916) ("a stockholder can maintain a [direct] action where the act of which complaint is made is not only a wrong against the corporation, but is also in violation of duties arising from contract or otherwise, and owing to him directly. . . . But the difficulty with the plaintiff's case is that he has failed to show any injury to himself apart from the injury to the corporation, in which he is a stockholder"); ***Tooley v. Donaldson, Lufkin, & Jenrette, Inc.***, 845 A.2d 1031, 1039 (Del. 2004) (holding that, to determine whether a shareholder's claim is direct or derivative, "a court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation"). As is hornbook law:

> If the injury is one to the plaintiff as a shareholder as an individual, and not to the corporation, for example, where the action is based on a contract to which the shareholder is a party, or on a right belonging severally to the shareholder, or on a fraud affecting the shareholder directly, or where there is a duty owed to the individual independent of the person's status as a shareholder, it is an individual action. If the wrong is primarily against the corporation, the redress for it must be sought by the corporation, except where a derivative action by a shareholder is allowable, and a shareholder cannot sue as an individual. . . . Whether a cause of action is individual or derivative must be determined from the nature of the wrong alleged and the relief, if any, that could result if the plaintiff were to prevail.

> In determining the nature of the wrong alleged, the court must look to the body of the complaint, not to the plaintiff's designation or stated intention. The action is derivative if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent dissipation of its assets. . . . If damages to a shareholder result indirectly, as the result of an injury to the corporation, and not directly, the shareholder cannot sue as an individual.
>
> 12B FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5911 (2013); *see also* ALI Principles of Corporate Governance § 7.01(a) ("[a]n action in which the holder can prevail only by showing an injury or breach of duty to the corporation should be treated as a derivative action").

*Hill*, 85 A.3d at 548-49;[13] *see also Cuker v. Mikalauskas*, 692 A.2d 1042 (Pa. 1997) (adopting selected *Principles of Corporate Governance* by the American Law Institute). In sum, if the "injury is both **dependent upon**

---

[13] In the seminal case of ***Tooley v. Donaldson, Lufkin & Jenrette, Inc.***, 845 A.2d 1031 (Del. 2004), the Delaware Supreme Court held that the "**proper analysis to distinguish between direct and derivative actions**" "must be based solely on the following questions: Who suffered the alleged harm-the corporation or the suing stockholder individually-and who would receive the benefit of the recovery or other remedy?" *Id.* at 1035. Stated differently, "Looking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?" *Id.* at 1036. "The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id.* at 1039.

and **derivative to** the corporate injury," then "the cause of action belongs to the corporation." *Hill*, 85 A.3d at 551.

Mismanagement of corporate assets is a common derivative claim. *Burdon v. Erskine*, 401 A.2d 369, 370 (Pa. Super. 1979). Similarly, destruction of value of stock is an indirect injury to the shareholder and thus the right to sue lies with the corporation. *White v. First Nat. Bank of Pittsburgh*, 97 A. 403, 405 (Pa. 1916) (*per curiam*) (affirming on basis of trial court's opinion). A fraudulent statement by a corporate officer is imputed to a corporation. *Gordon v. Cont'l Cas. Co.*, 181 A. 574, 578 (Pa. 1935); *cf. Official Comm. of Unsecured Creditors of Allegheny Health Educ. & Research Found. v. PriceWaterhouseCoopers, LLP*, 989 A.2d 313, 315-16 (Pa. 2010) (addressing issues involving alleged misstatements of corporation's finances).

In construing these principles, we recognize Pennsylvania is a fact pleading jurisdiction. *Griffin v. Rent-A-Center, Inc.*, 843 A.2d 393, 395 (Pa. Super. 2004). The plaintiff, therefore, bears the burden of alleging material facts underlying the legal claim. *Id.* For example, for fraudulent misrepresentation, the following must be alleged:

> A cause of action for fraudulent misrepresentation is comprised of the following elements: (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result.

- 17 -

***Martin v. Lancaster Battery Co.***, 606 A.2d 444, 448 (Pa. 1992) (internal quotation marks and citation omitted).

Pennsylvania recognizes both the common law and Restatement (Second) of Torts § 552 formulations of a negligent misrepresentation claim. ***See Bilt-Rite Contractors, Inc. v. The Architectural Studio***, 866 A.2d 270, 280, 285 (Pa. 2005).  The common law factors follow:

> Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.  The elements of negligent misrepresentation differ from intentional misrepresentation in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words.  Moreover, like any action in negligence, there must be an existence of a duty owed by one party to another.

***Id.*** at 277 (citations omitted).

The Restatement (Second) of Torts § 552 delineates the elements differently:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction. . . .

Restatement (Second) of Torts § 552 (1977).

Instantly, for count III, breach of fiduciary duty, we examine the nature of the alleged wrong and the party that would receive relief.  **See Hill**, 85 A.3d at 548-49.  Marianne alleged that Thomas and Maureen owed a fiduciary duty to Kitty and breached that duty by wasting and otherwise misappropriating corporate assets.  **See** Compl. at ¶ 76(a)-(h); **see also** 15 Pa.C.S. § 1717.  Marianne explicitly alleged that **Kitty** "suffered substantial harm and damages" of at least $50,000.  **Id.** at ¶ 78.  At the outset, courts typically construe such a claim as derivative.  **See Burdon**, 401 A.2d at 370. Indeed, Marianne did not allege a direct personal injury to **her**; rather, her injury is indirect and thus insufficient to establish standing.  **See Hill**, 85 A.3d at 548-49.  Marianne's emphasis on the plural word "duties," disregards the gravamen of the claim, which seeks recovery of corporate assets.  **See** Compl. at ¶ 78; **Hill**, 85 A.3d at 548-49 ("The action is derivative if the gravamen of the complaint is injury to the corporation . . . or if it seeks to recover assets for the corporation . . . .").  Because this is a

derivative claim, Section 1717 bars Marianne from raising this cause of action directly. *See* 15 Pa.C.S. § 1717.

With respect to count VI, fraudulent misrepresentation, and count IX, negligent misrepresentation, Kitty was not identified as a plaintiff for either claim. Kitty's absence from the label of the counts alone, however, does not presumptively establish that these claims are direct, as we are obliged to examine the substance of the claims. *See Hill*, 85 A.3d at 548-49. (holding, "the court must look to the body of the complaint, not to the plaintiff's designation"). Both counts alleged Defendants misrepresented Kitty's financial state thus causing damage to Marianne, who relied on those misstatements. Compl. at 23-24, 31. Marianne's injury is thus dependent upon establishing the misrepresentation of Kitty's finances—an injury to Kitty. *See Hill*, 85 A.3d at 548-49, 551; *see also Bilt-Rite Contractors*, 866 A.2d at 280, 285; *Martin*, 606 A.2d at 448; *cf. Gordon*, 181 A. at 578. Marianne, therefore, cannot prevail without demonstrating harm to Kitty. *See Hill*, 85 A.3d at 548-49; *Tooley*, 845 A.2d at 1036, 1039. Accordingly, we hold Marianne's claims for breach of fiduciary duty, fraudulent misrepresentation, and negligent misrepresentation are derivative and thus she lacks standing.

For her second issue, Marianne assumes this Court determined that all her claims are derivative. She opines that she nonetheless has standing.

Marianne contends the court should have adopted Section 7.01(d) of the Principles of Corporate Governance by the American Law Institute:

> (d) In the case of a closely held corporation [§ 1.06], the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

*Hill*, 85 A.3d at 553 (quoting ALI Principles of Corporate Governance § 7.01(d) (1994)). These principles, Marianne suggests, permit her to pursue these derivative claims on behalf of a closely held corporation, such as Kitty. She acknowledged that this Court in *Hill* rejected Section 7.01(d), but insists that decision should not apply retroactively to the instant case, which commenced several years before *Hill* was decided. Marianne, we hold, is not entitled to relief.

In *Hill*, the plaintiff argued that even if his claims were derivative, he nonetheless had standing because the corporation at issue was closely held. *Hill*, 85 A.3d at 553. The *Hill* plaintiff suggested this Court adopt Section 7.01(d), based on, *inter alia*, our Supreme Court's adoption of certain other ALI Principles in *Cuker*. The *Hill* Court, however, opined that our Supreme Court would not adopt the substantive aspects of Section 7.01(d), as it "would not simply ignore the corporate form and allow courts to 'treat an action raising derivative claims as a direct action . . . and order an individual

- 21 -

recovery.'" *Hill*, 85 A.3d at 556 (quoting Section 7.01(d)). "[W]e conclude that our high Court would not allow individuals such as [the plaintiff] to sue directly—and individually recover—for injuries that were sustained by the closely held corporation. As such, we conclude that [the plaintiff] does not have standing to maintain a direct suit in this case."[14] *Id.* at 553. "[T]o the extent that Section 7.01(d) would permit a shareholder to sue directly—and individually recover—for a breach of a director's duty to the corporation, the section is not 'consistent with Pennsylvania law' and, as such, would not be adopted by our Supreme Court." *Id.* at 556. Thus, because the *Hill* Court predicted that our Supreme Court would not adopt the substantive aspects of Section 7.01(d), it similarly refused to apply Section 7.01(d), and held the plaintiff lacked standing. *Id.*

The following is well-settled:

> The general rule in Pennsylvania is that appellate courts apply the law in effect at the time of appellate review. This means that we adhere to the principle that a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur before the judgment becomes final. However, this general rule is not applied rotely. Whether a judicial decision should apply retroactively is a matter of judicial discretion to be decided on a case-by-case basis. To determine whether a decision should have retroactive effect, a court should first determine whether the decision announced a new rule of law.

---

[14] As noted above, the instant case was pending when the *Hill* Court issued its decision on February 5, 2014. Defendants moved for summary judgment on February 28, 2014.

***Passarello v. Grumbine***, 87 A.3d 285, 307 (Pa. 2014) (quotation marks,

brackets, and citations omitted).[15]

> Not every opinion creates a new rule of law. Generally, where we have yet to rule explicitly on an unresolved legal issue, the first decision providing a definitive answer announces a new rule of law. When this Court issues a ruling that overrules prior law, expresses a fundamental break from precedent, upon which litigants may have relied, or decides an issue of first impression not clearly foreshadowed by precedent, this Court announces a new rule of law.

***Fiore v. White***, 757 A.2d 842, 847 (Pa. 2000) (citations omitted).

> If the decision announced a new rule, the court should then consider whether: (1) retroactive effect will further or hinder the purpose of the new rule; (2) the parties will be unfairly prejudiced because they relied on the old rule; and (3) giving the new rule retroactive effect will detrimentally affect the administration of justice.

***Passarello***, 87 A.3d at 307 (citation omitted).

Applying these precepts to ***Hill***, we acknowledge that no court, prior to

***Hill***, ruled on whether Pennsylvania courts should adopt Section 7.01(d).

The ***Hill*** Court was the first decision to answer that question definitively and

thus announced a new rule of law. ***See Fiore***, 757 A.2d at 847; ***Hill***, 85

---

[15] "At common law there was no authority for the proposition that judicial decisions made law only for the future. Blackstone stated the rule that the duty of the court was not to 'pronounce a new law, but to maintain and expound the old one.' 1 Blackstone, Commentaries 69 (15th ed. 1809)." ***Linkletter v. Walker***, 381 U.S. 618, 622-23 (1965) (footnotes omitted). "As Justice Holmes observed: 'Judicial decisions have had retrospective operation for near a thousand years.'" ***Gibson v. Commonwealth***, 415 A.2d 80, 84 (Pa. 1980) (citation omitted).

A.3d at 556. Applying the new rule here would further the purpose of *Hill*: ensuring courts do not adopt Section 7.01(d), as it conflicts with Pennsylvania law. *See Passarello*, 87 A.3d at 307. Similarly, because there was no rule addressing Section 7.01(d) prior to *Hill*, no party can claim it was unfairly prejudiced because it relied on an "old rule." *See id.* Finally, we fail to discern any detrimental impact on the administration of justice if we applied *Hill* to this case. *See id.* Indeed, if we did not apply *Hill*, then the administration of justice would be impacted as we would be treating similarly situated parties—the parties in *Hill* and the instant parties—differently. *See id.* Assuming Marianne's claims are all derivative, the trial court did not err by holding she lacked standing to raise these claims on behalf of Kitty, a closely held corporation. *See id.* Accordingly, the trial court did not err by applying *Hill* to the instant case, and we affirm the order below. *See Daley*, 37 A.3d at 1179.

Order affirmed.

Panella, J. joins the Memorandum.

Bowes, J. files a Concurring and Dissenting Memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/22/2016

- 24 -